MINNIE LISTER

*v.*

GEORGE T. LISTER.

[Decided October 5th, 1915.]

1. Extreme cruelty is not a ground for a decree of absolute divorce in New Jersey.

2. Evidence, in a wife's suit for maintenance, *Held* to show that defendant's absolute divorce in the State of Nevada had been fraudulently obtained on his false representations of his residence in that state.

3. Jurisdiction of a court to grant a divorce cannot rest in the slightest degree upon the consent of the parties to the marriage, or both of them.

4. A divorce suit is a "suit *in rem*," the essential characteristic of which is found in the power of the state through the decree or judgment of its court to dispose of the subject-matter of the suit, the *res*, in accordance with the object of the suit, whether that subject-matter be physical property or the status of one or both of the parties litigant, which decree operates immediately and absolutely upon the status of the suitor which is the *res* in the suit without the necessity of execution, attachment or contempt proceedings to enforce it.

5. The term *"res"* is one of somewhat wide content, and embraces not only lands and chattels, but also the status of individuals, as parent and child, husband and wife, guardian and ward, and also the status of an individual, as citizen and as a voter.

6. A decree of divorce by a court in Nevada undertaking to dispose of the status in respect of marriage of spouses not resident in that state is a nullity, as that state is powerless either by an act of its legislature or by a decree of its court to fix the status of a person as married or unmarried when such person is only transiently commorant therein, as the spouse commorant there but actually resident in New Jersey has no power against that state to carry his status in respect of marriage from the State of New Jersey into the State of Nevada so as to subject such status to the power of the State of Nevada exercised through its court by an action *quasi in rem.*

7. There is no principle of comity which interferes with the power of the State of New Jersey in accordance with its law, to deny the right of any court in Nevada to determine the matrimonial status of the defendant in this case, or to decree that he is an unmarried man unless he ceased to be a *bona fide* resident of New Jersey and became a *bona fide* resident of Nevada.

8. Where a husband did not lose his residence in New Jersey and never became a *bona fide* resident of Nevada, and committed a fraud upon the laws of both states in falsely swearing that he was such *bona fide* resident of Nevada, the appearance of the wife in such suit and her litigation thereof did not give the Nevada court jurisdiction.

9. There is no such thing as an action *in personam* for divorce, but every suit for divorce is necessarily an action *in rem*, or an action *quasi in rem*, in which the decree operates immediately and absolutely upon the *res.*

10. Where the spouses are residents of different states there is a separate *res* which may be the subject-matter of a divorce suit in each state.

11. Where a husband was a *bona fide* resident of Nevada so as to give its courts full jurisdiction therein of his status in that state in respect of marriage with a *bona fide* resident of New Jersey, who in good faith appeared and litigated the suit, this state, under the principle of comity, will permit the result of that suit in respect of the husband's status in that state in many, but not in all, cases to determine the status of the wife in New Jersey.

12. The requirement of the federal constitution that every state shall give full faith and credit to the judicial proceedings of every other state,

does not expand the operation of a Nevada divorce decree which New Jersey must respect, but only compels New Jersey to recognize that the matrimonial status of a spouse resident in Nevada for all purposes within the State of Nevada, must be deemed as having been dissolved by a decree of divorce duly granted to such Nevada spouse in a Nevada court as against the wife, a resident of New Jersey, and does not require New Jersey to recognize such decree as having any validity in New Jersey even although the wife appeared and litigated the Nevada suit in good faith, inasmuch as New Jersey need not allow its citizens to carry their matrimonial status to a foreign state and subject it to the decree of a foreign court except by changing their *bona fide* residence to that state, *animo manendi;* even after the plaintiff spouse became a *bona fide* resident of Nevada the wife's appearance and her *bona fide* litigation could not bring the Nevada decree within the full faith and credit clause, but would leave it to be treated as valid or invalid under the statutes and decisions of New Jersey.

13. A case decides what the court in the discharge of its duty is obliged to and actually decides, and all else is *"dictum."*

14. Under the Divorce act 1907 (*2 Comp. Stat. 1910 p. 2042 § 33*), providing that full faith and credit shall be given in all courts of the state to a decree of divorce by a court of competent jurisdiction in another state when its jurisdiction was obtained in conformity to the conditions prescribed in sections 5, 6 and 7 thereof, and that if any resident of the state goes into another state to obtain a divorce for a cause arising while the parties resided in the state, or for a cause not a ground of divorce under the laws of the state, the decree shall be of no effect in the state, a decree of absolute divorce granted to a husband in Nevada, whence he had gone to obtain the divorce for a cause not a cause for absolute divorce in New Jersey, arising while they were domiciled in the state, as against the wife, never domiciled in any other state, was void.

15. Such decree being void, the defendant, notwithstanding, was the husband of the complainant, charged with the duty of supporting her and subject to her action for non-support under the Divorce act 1907. *P. L. 1907 p. 482 § 26.*

16. In a wife's suit for maintenance under section 26 of the Divorce act, her release in consideration of $400 in full settlement of all her claims against the husband, agreeing to discontinue any suits against him, given after he had obtained a fraudulent and void decree of absolute divorce in another state, and when she was under great financial embarrassment and discouraged by her efforts to obtain justice from him, and greatly tempted by the opportunity of temporary relief, in view of its failure to provide for her future support, was not enforceable in equity, and hence no defence to the suit.

17. All contracts between husband and wife are void in law, and in equity are only contracts *sub modo*, entirely within the control of courts of equity and are enforceable, especially against the wife, only to the extent to which they are equitable and fair.

On suit for maintenance under section 26 of the Divorce act. Heard on bill, answer and proofs taken in open court.

*Mr. John I. Weller,* for the complainant.

*Mr. J. W. Rufus Besson,* for the defendant.

STEVENSON, V. C.

1. There are two defences and two only which are set up in the defendant's amended answer, or in any way suggested by the evidence, viz.:

(1) That the defendant before the filing of the bill obtained an absolute divorce from complainant in the State of Nevada, and

(2) That after this suit was brought in this court the defendant paid the complainant $400, which she agreed to receive "in full settlement of all claims."

2. I shall not undertake to discuss in detail the evidence pertinent to the controversy between the parties in relation to the defendant's Nevada divorce. That divorce, or attempted divorce, in my judgment was a perfectly plain case of gross fraud upon the laws of New Jersey, and also the laws of Nevada. The alleged divorce must be treated by the courts of the State of New Jersey as null and void on two grounds which will be hereinafter stated.

The couple were domiciled in New Jersey before their marriage, and after their marriage continued to be domiciled in this state until the month of January, 1908, when the defendant abandoned his wife and went to the State of Nevada, where he took up his abode in a hotel at Reno. About two days after the expiration of the necessary six months he commenced a suit for an absolute divorce in the Nevada court against his wife who remained in New Jersey, alleging as the ground for such divorce, extreme cruelty inflicted upon him by her. Although the defendant's petition or complaint does not state where the alleged cruel acts were committed by his wife, the inference is absolute that such acts must have been committed in the State of New Jersey, so that the whole cause of action, whatever its nature might be, arose in the State of New Jersey. Extreme cruelty

is not a ground for a decree of absolute divorce in New Jersey. The complainant, the defendant in the Nevada divorce action, was served with notice of the suit and a copy of the complaint in the State of New Jersey, and thereupon attorneys practicing in Nevada were retained to represent her in the suit. It is alleged on behalf of the complainant that the Nevada attorneys, went beyond their instructions and appeared generally for the complainant and defended the suit, whereas their retainer was limited in its character. There certainly is evidence which indicates that the complainant's interests were not wisely, if honestly, cared for in the Nevada suit, but in this case we must accept the proposition that the complainant, the defendant in the divorce suit, upon being served in New Jersey with full notice of the Nevada suit against her, voluntarily appeared by Nevada attorneys and defended the suit on the merits.

The divorce suit came to a final hearing three or four months after its commencement, and the decree of divorce was granted on December 19th, 1908. Two days after the decree was granted the defendant left the State of Nevada, met the woman in Colorado on whose account he deserted his wife, and went through a ceremony of marriage with her on the 24th day of December, 1908. The defendant has never returned to the State of Nevada, but has of late resided in the city of Chicago with his alleged new wife by whom he has had two children. The total period of the defendant's sojourn in the State of Nevada for the purpose of obtaining a divorce was not more than six days in excess of the statutory period of six months, and the period of a few months thereafter ending when the decree was obtained. No evidence, except the defendant's own testimony was produced before this court to show that the defendant engaged *bona fide* in any business in the State of Nevada, or established any permanent relations with that state, or its business, and the testimony of the defendant himself on these subjects was exceedingly meagre and altogether unsatisfactory. The following is part of his cross-examination:

"*Q.* You were going to stay there [in Nevada] all your life?
"*A.* Not necessarily.
"*Q.* You were going to make that your home?
"*A.* Yes, sir; for awhile until I got well."

The complainant is directly corroborated by two witnesses in her positive testimony that the defendant shortly before he deserted his wife in New Jersey, offered her money to induce her to submit to a divorce, and threatened that if she did not consent he would go to another state and get a divorce from her. This testimony outweighs the defendant's uncorroborated denial.

Without stating further details it is sufficient for present purposes to state the conclusion of fact that this is a typical case of a fraudulent Nevada divorce based upon a false representation of residence in that state, and the record indicates that practically no effort is made in the Nevada courts to expose and repel these emigrants from other states, who by fraud and perjury impose themselves upon the State of Nevada as *bona fide* residents, residents *animo manendi.*

3. The first ground upon which this Nevada divorce will be held void in New Jersey is based upon our law as it now exists, and as it existed prior to the enactment of the Divorce act of 1907. It is, I think, the established law of this state that jurisdiction of a court to grant a divorce from the bond of matrimony cannot rest in the slightest degree upon the consent of either of the parties to the marriage, or of both of them. Any divorce granted by a court in a foreign state in which neither of the parties was a *bona fide* resident, would, I think, be treated as void by the courts of New Jersey even although neither of the parties was at any time a resident of this state. Of course it is not necessary to lay down such an extreme proposition in this case because the complainant was domiciled in New Jersey, the matrimonial domicile was here and the defendant's pretended change of domicile and residence was a fraud and a sham.

A divorce suit is a suit *in rem.* The term *"res"* is one of somewhat wide content and it embraces not only lands and chattels but also the status of individuals, as parent and child, husband and wife, guardian and ward, and also the status of an individual, as a citizen and as a voter. The essential characteristic of an action *in rem,* I think, is to be found in the power of the state through the decree or judgment of its court to dispose of the subject-matter of the suit, the *res,* in accordance with the object of the suit, whether that subject-matter be physical prop-

erty or the status of one or both of the parties litigant. See *Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197, 203.* In actions *in personam* judgments or·decrees do not *ipso facto* accomplish the objects of the suits in which they are rendered. An execution follows which may be abortive, or proceedings may be taken to compel the defendant to do what he is directed to do by the decree, which proceedings may prove to be inefficacious. Suits for specific performance of contracts to convey real estate, formerly were actions *in personam,* and the decree only operated upon the person and might never operate to give the complainant the relief which was awarded him by the decree. Subsequent legislation, however, has in many states made such a suit an action *in rem* or *quasi in rem.* At present such suits when brought in a foreign state where the land in question does not lie, are purely actions *in personam* although if the land lay in the state where the suit was brought the action might be *in rem* or *quasi in rem.*

A decree of divorce operates immediately and absolutely upon the status of the suitor which is the *res* in the suit. No execution, attachment or contempt proceedings are necessary in order to enforce the decree. From the very nature of the case, however, a decree of divorce by a court in Nevada, undertaking to dispose of the status in respect of marriage of spouses who are not resident in the state, would be a decree in the air. A husband and wife domiciled in New Jersey, while passing through the State of Nevada on a railroad train, certainly could not get off at Reno and immediately give a Nevada court jurisdiction to determine their status in respect of marriage, and dissolve their marriage even if the legislature of Nevada should undertake to give the courts of the state such extraordinary powers. An act of the legislature of a state undertaking to divorce all married persons who pass through the state on a railroad train, would never be recognized by courts of other states as having the slightest trace of validity apart from all objections to such legislative action arising from federal or state constitutions. The State of Nevada is powerless by an act of its legislature, or by a decree of its court to fix the status of a man or woman as married or unmarried, when such man or woman is only

transiently commorant within the borders of the state. The question whether a man is married, or is a citizen, or is a voter cannot arise in the State of Nevada, unless the man is a *bona fide* resident of the state, for the reason that it is of the nature of such at status that it pertains to individuals who are permanently located in the place where the status is to be recognized or denied. A spouse commorant in Nevada but actually resident in New Jersey, has no more power as against the State of New Jersey to carry his status in respect of marriage, from the State of New Jersey into the State of Nevada so as to subject such status to the power and control of the State of Nevada, exercised through its courts by an action *quasi in rem,* than he has to lift up a tract of land in New Jersey which he owns and transport it to the State of Nevada, so as to subject it to an action *quasi in rem* in a Nevada court. Where the *res* is land it is manifest that it cannot be moved out of the state where it lies. When the *res* consists of chattels it is equally clear that such *res* can be transported and located successively in very many states, and thus made subject to the power of such states exercised through courts, legislatures or other governmental agents. When the *res* is a status in respect of marriage, it can be transported in a certain way, viz., by transporting, or in other words, changing the residence of the party whose status is under consideration.

The authorities I think all sustain the proposition that there is no principle of comity which interferes with the power of the State of New Jersey, in accordance with its well settled law, to deny the right of any court in Nevada to determine the status of the defendant in this case in respect of marriage, or to decree that he is an unmarried man unless he ceased to be a *bona fide* resident of New Jersey and became a *bona fide* resident of Nevada. Inasmuch, therefore, as I have found as a matter of fact that the defendant did not lose his residence in New Jersey —never became a *bona fide* resident of Nevada—and that he committed a fraud upon the laws of New Jersey and also the laws of Nevada, in falsely swearing that he was such *bona fide* resident of Nevada, it follows that the appearance of the complainant in the divorce suit, and her litigation of that suit, have

no effect to give the Nevada court jurisdiction either of her own status, or that of her husband in New Jersey, in respect of marriage.

At this point it may be well to note that under the system of divorce law which we enforce and recognize in New Jersey, there is no such thing as an action *in personam* for divorce. Every suit for divorce of necessity is an action *in rem,* or to use perhaps a more accurate term, an action *quasi in rem,* in which the decree operates immediately and absolutely upon the *res.*

4.  Where the spouses are residents of different states, then there is a separate *res* which may be the subject-matter of a divorce suit in each state. *Haddock* v. *Haddock, 201 U. S. 577; 50 L. Ed. 867, 873,* per Chief-Justice White. It seems to me that confusion of thought and consequent error have arisen from the failure to recognize the fact that each state absolutely controls the status of its domiciled citizens with respect to marriage. There is nothing strange in the notion that a man may be a married man in one state, and an unmarried man in another state. A woman in New Jersey may be recognized by all the governmental agents of that state as married to a man in Illinois, while the man in Illinois may be recognized by all the governmental agents of that state as not married to the woman in New Jersey, but as unmarried or as married to some other woman. Each state enforces its own view within its own territory with regard to the status of its residents who are permanently subject to its power. Where one of the two states undertakes to divorce the spouse resident within its borders, the state where the other spouse resides under the principle of comity frames its own code determining how far the action of the foreign state shall be recognized as determining the matrimonial status of its own resident.

In the *Haddock Case* Chief-Justice White (*p. 570, L. Ed. p. 870*) in his comprehensive and illuminating opinion states that "it has been decided that where a *bona fide* domicile has been acquired in a state by either of the parties to a marriage, and a suit is brought by the domiciled party in such state for divorce, the courts of that state if they acquire personal jurisdiction also

of the other party, have authority to enter a decree of divorce entitled to be enforced in every state by the full faith and credit clause." Citing *Cheever* v. *Wilson, 76 U. S. 108; 19 L. Ed. 604.* This statement of the learned chief-justice seems to be made incidentally and to constitute no essential part of his authoritative opinion.

If we accept as our fundamental premise that a divorce suit is a suit *in rem,* and that no appearance or consent can give a court jurisdiction of the *res* involved in the suit, I am unable to perceive the soundness of the doctrine which is referred to by the learned chief-justice as something "decided" by the case above cited. If a woman, a resident of New Jersey, goes voluntarily into a Nevada court and litigates a divorce suit, brought in that court against her by her husband who is a *bona fide* resident of Nevada, I am unable to perceive how anything more than the original *res, i. e.,* the status of the husband in respect of marriage in the State of Nevada, can be involved. The other *res* which is the status of the woman, in respect of marriage in the State of New Jersey, cannot be subjected to the jurisdiction of a Nevada court by any appearance or other action on the part of the woman. According to the doctrine alleged to be sustained by the case of *Cheever* v. *Wilson,* the full faith and credit clause operates to permit the New Jersey spouse to subject her status in respect of marriage in New Jersey under the laws of New Jersey to the control of the Nevada court without regard to the laws or policy of New Jersey.

In this connection it may be noted that no New Jersey spouse under our present Divorce act can, by a voluntary appearance, subject his or her matrimonial status to the jurisdiction of a New Jersey court. *Henry* v. *Henry, 79 N. J. Eq. 493; affirmed, 81 N. J. Eq. 512.* It would be a strange result if, while the court of chancery of New Jersey can only "acquire" jurisdiction of the matrimonial status of a spouse resident in New Jersey, by service of process as prescribed by statute, a Nevada court could, under the full faith and credit clause, destroy the matrimonial status of the New Jersey spouse in New Jersey, in a suit in which jurisdiction of the defendant's status in New

Jersey was obtained by her voluntary appearance in the Nevada court.

Of course, if the husband is a *bona fide* resident of Nevada so as to give the Nevada court full jurisdiction in the State of Nevada of his status in Nevada in respect of marriage with his wife who is a *bona fide* resident of New Jersey, and the wife in good faith appears and litigates the Nevada suit, the State of New Jersey under the principle of comity has ordained that the result of the Nevada suit in respect of the husband's status in Nevada, shall also in many, but by no means in all, cases determine the status of the woman in the State of New Jersey. This is a very different result from that which is reached by forcing the adjudication of the Nevada court upon the State of New Jersey under the full faith and credit clause simply because of the voluntary appearance of the New Jersey spouse in the Nevada divorce suit. New Jersey must give full faith and credit to Nevada decrees where the Nevada courts have jurisdiction, but the constitutional mandate does not expand the operation of the Nevada decree which New Jersey must respect. The Nevada decree which the full faith and credit clause commands New Jersey at all times to respect, is the decree of the Nevada court that *in Nevada* where such decree can be enforced, the status of marriage has been destroyed. In other words, the full faith and credit clause compels the State of New Jersey to recognize that the status of marriage, in which its own resident in New Jersey is interested, must be deemed *for all purposes within the State of Nevada,* as having been dissolved. If the full faith and credit clause can apply so as to make the Nevada decree of divorce in the case under consideration, operate in the State of New Jersey without regard to the New Jersey code based on comity, then it follows that the Nevada court has disposed not only of a *res* within its jurisdiction, placed within its jurisdiction by the *bona fide* residence of one spouse, but also of a New Jersey *res,* the status of the New Jersey spouse under the laws of New Jersey, which in some mysterious manner the New Jersey spouse by voluntary action has succeeded in carrying from the State of New Jersey and placing within the jurisdiction of the Nevada court. When the State of New Jersey lays

down a code based on comity, under which a decree of divorce in a Nevada court, dissolving a marriage between a *bona fide* resident of Nevada and a *bona fide* resident of New Jersey, is recognized and enforced in New Jersey, this is merely an instance in which the State of New Jersey exercises its own power over a certain *res* the situs of which is in New Jersey, viz., the status in New Jersey of its own resident in respect of marriage. The power of Nevada to control and dispose of a Nevada *res* is not extended in such a case into the State of New Jersey so as to control a New Jersey *res* by the full faith and credit clause.

It has become a common practice in the eastern states among incompatible spouses, to arrange for a divorce without scandal, taking advantage of the laws of some of the western states which seem to foster the divorce industry for the benefit of their legal practitioners. The scheme is a very simple one. One spouse goes to a western state, Nevada, for instance, stays six months at a hotel, perhaps making frequent visits back to the east, and then institutes a suit for divorce in Nevada. The other spouse, the defendant, making no pretence of changing his or her domicile from the eastern state, retains a Reno lawyer who enters an appearance and files an answer, and thus makes a show of defence. The trial often is a sham. The divorce is granted. The plaintiff spouse returns immediately to his or her eastern domicile, and both spouses, the mock combatants, assume that under the full faith and credit clause their status as husband and wife in their eastern domicile has been abolished. In my judgment the State of New Jersey will not recognize such a proceeding as having any validity in her territory where one of her residents, subject to her power and governed by her laws, is one of the spouses in the affair. Nor do I think that if the emigrant spouse in fact becomes a resident of Nevada in good faith, *animo manendi,* and the New Jersey spouse in good faith litigates the Nevada suit, the full faith and credit clause can in the slightest degree affect the status in New Jersey of the New Jersey spouse. This clause is potent but it cannot enlarge the Nevada decree which when left unaided by New Jersey law can only affect the status of the spouses in Nevada.

New Jersey will not allow her citizens to transport their matrimonial status to a foreign state and subject that status to the decree of a foreign court, except by transporting their *bona fide* residence to such state, *animo manendi*. How far New Jersey will accept and enforce in her territory a Nevada decree divorcing a spouse resident in Nevada, from a spouse resident in New Jersey is a matter, I think, which New Jersey has a right to determine for herself. If the plaintiff has a *bona fide* residence in Nevada so that there is a *res* of which the Nevada court has full jurisdiction, then in large numbers of cases and under certain conditions New Jersey law ordains that the Nevada decree affecting the Nevada *res* shall in like manner affect the New Jersey *res*. *Felt* v. *Felt, 59 N. J. Eq. 606*. The full faith and credit clause, however, is in my judgment, entirely inoperative in this class of cases.

Nevada makes "habitual gross drunkenness" a ground for absolute divorce (*2 Nels. Div. & Sep. 1040*), and might at any time make "incompatibility" or "gross neglect of duty" a sufficient ground, or might, following a policy which formerly was adopted in some of the states, permit its courts to divorce its residents "for any cause deemed by the court sufficient." If a man domiciled with his wife in New Jersey emigrates to Nevada and becomes a *bona fide* resident of that state, and obtains an absolute divorce from his New Jersey wife on the ground of drunkenness or incompatibility, or some other ground absurdly inadequate according to New Jersey law and policy, in a suit in which his New Jersey wife voluntarily appears and litigates in good faith, it may be that the full faith and credit clause will compel New Jersey to recognize the Nevada decree in its effect upon the Nevada *res,* but there is no suggestion in any New Jersey decision that such a decree would have any effect under the laws of New Jersey upon the New Jersey *res*. The exact contrary is plainly indicated. See *Felt* v. *Felt, supra* (at *p. 610*). Can it possibly be held by the supreme court of the United States that the full faith and credit clause compels New Jersey against her will and in flagrant violation of her policy in regard to the institution of marriage, to recognize the Nevada decree as disposing of the New Jersey *res* —as destroying

the matrimonial status of her citizen—merely because her citizen
saw fit to appear in the Nevada suit and thus attempt to transfer
her status to that state? It may be noted that the case of
*Cheever* v. *Wilson, supra,* cited by Chief-Justice White was de-
cided nearly fifty years ago when the subject of the situs of
matrimonial status as a *res* was involved in obscurity and af-
fected by some juridical notions which since that time have been
repudiated by the courts, and it is also to be noted that the propo-
sition which the eminent chief-justice says was "decided" in
that case is found in the opinion of the court delivered by Mr.
Justice Swain, and is contained in his discussion of questions
raised by counsel in the argument but which were not within
the issues "made in the pleadings."

The learned justice having distinctly found that the parties
seeking to attack the foreign decree were "precluded by the
settled rules of equity jurisprudence from entering upon such
an inquiry," and that their silence was an admission and that
they were "bound" by the implication, proceeded without sug-
gesting an amendment of the pleadings to express the "views"
of the court upon the question, which was not properly in liti-
gation before them, because that question had "been fully argued
upon both sides" and might arise thereafter. Strictly speaking,
the law of judicial decision cannot in this manner be evolved
in advance by judges however exalted and learned. This is the
appropriate method of legislation. A case "decides" what the
court in the discharge of its duty is obliged to decide. All
else is *dictum.* As that great jurist, Lord Halsbury, remarks,
"A case is only an authority for what it actually decides."
*Quinn* v. *Leathem (1901), A. C. 495, 506.* Even the supreme
court of the United States is powerless to decide with finality
a question which is not a part of the issues presented by the
pleadings or in some appropriate manner submitted for decision
by the record merely because counsel see fit to argue that question
and as the result of such argument the court is induced to
entertain "views."

I am pursuing this subject, however, perhaps too far for
present purposes because we are dealing with a case where this
court has found from the evidence that the Nevada court never

obtained jurisdiction of the *res* which it undertook to dispose of, viz., the status in Nevada of the defendant in this suit, the husband, with respect to his marriage with the complainant who was at all times a resident of New Jersey. The correctness of this finding of fact by this court, however, may be challenged and therefore I have considered it proper and in fact the duty of this court to rest the decree in favor of the complainant in this cause upon the further ground that even if the defendant (the husband) became a *bona fide* resident of Nevada, the appearance in his divorce suit by his New Jersey wife and her *bona fide* litigation of that suit, cannot bring the Nevada decree within the operation of the full faith and credit clause, but leaves that decree to be treated as valid or invalid in New Jersey under the statutes enacted by the New Jersey legislature and the decisions rendered by the New Jersey courts.

5. The decree of the Nevada court is also void in New Jersey under the provisions of section 33 of the Divorce act of 1907. *1 Comp. Stat. p. 2042.*

The evidence in this case has satisfied this court that the defendant being an inhabitant of this state, went into the State of Nevada "in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state," and also "for a cause which is not ground for divorce under the laws of this state," and the statute declares that "a decree so obtained shall be of no force or effect in this state."

As we have seen the proof is absolute that the entire cause of divorce set up in this Nevada suit, and attempted to be proved therein, must have arisen while the parties were domiciled in the State of New Jersey, for the wife, the complainant, has never been domiciled in any other state.

Of course the word "divorce" in the two members of the sentence quoted from the statute, means the same kind of divorce. In other words, it does not help the defendant's case that the cause of absolute divorce which he set up in his Nevada suit, while not a cause of absolute divorce in New Jersey, is a cause of limited divorce or mere separation from bed and board. The fact is plain that the defendant obtained an absolute divorce in Nevada for a cause which is not ground for an

absolute divorce in New Jersey. It is unnecessary to discuss the evidence which shows that the defendant went to Nevada "in order to" do the thing which he did—the only thing which appears to have been attempted or accomplished by him by virtue of his alleged residence in that state.

It will be seen that our statute is doubly applicable to the defendant's Nevada divorce suit.

We need not consider whether our statute, which is substantially a copy of a prior Massachusetts statute, extends to every case where the married person domiciled in New Jersey goes into another state in order to obtain a decree of divorce coming within either of the two categories described by the statute, but with the further *bona fide* intention of becoming a resident and acquiring a domicile in the state to which he goes, and in fact does acquire such residence and domicile. I shall not stop to inquire in this case whether the force of the words "inhabitant of this state" operates upon all parts of the transaction described by the statute. The Massachusetts statute was sustained by the supreme court of the United States in the case of *Andrews* v. *Andrews, 188 U. S. 14; 47 L. Ed. 366*, in a case where the court found that no *bona fide* residence had been acquired by the party who had procured the divorce, which under the Massachusetts law was held void in the State of Massachusetts. Whether the Massachusetts statute and our New Jersey statute may or might be construed to have been intended to apply to cases where the objectionable divorce has been obtained by a party who went from the state where he and his spouse resided, to the state where he obtained his divorce, with an actual *bona fide* intent to become a resident and citizen of the state where he went as well as with intent to obtain such divorce, the above cited decision of the supreme court of the United States is a controlling authority sustaining these statutes in their application to cases like the one now before this court, where the court finds that the party obtaining the objectionable divorce in fact never intended to become and did not in fact become a *bona fide* resident of the state where he obtained the divorce.

The New Jersey and Massachusetts statute in terms might be deemed to apply to several cases where after the emigration

of one spouse in order to obtain a divorce, the other spouse thereupon emigrates to the same state, or to a different state, and thus effects a *bona fide* change of residence. Incongruous and absurd results can be avoided by confining the statute by implication to cases where the matrimonial domicile has been in New Jersey, and the spouse deserted in New Jersey remains resident in the state until after the emigrant spouse has obtained his foreign decree of divorce. However that may be, it is, as we have seen, established law that in a case like this, where the State of Nevada had no jurisdiction of the matrimonial status of these parties, or the matrimonial status of either of them, the Nevada decree must be deemed "of no force or effect in this state" under the provisions of our statute. I may add that in the absence of any direct decision of the supreme court of the United States to the contrary, I think we have the right to hold in New Jersey that in a case like this, even assuming that the husband became a *bona fide* resident of Nevada, and the wife *bona fide* litigated the divorce suit there, this express statute, apart from all other laws of New Jersey, prevented the wife by her voluntary litigation of her husband's suit from enabling the husband to obtain in Nevada a decree of divorce which shall have full "force and effect" in the State of New Jersey. The statute ordains that in the cases to which it applies, the New Jersey *res* shall not be transported to a foreign state and shall not be affected in New Jersey by a decree of divorce obtained in a foreign state to which one of the spouses may have emigrated with intent to obtain the divorce, even though the emigrant may become a *bona fide* resident of such foreign state.

6. The result of the foregoing considerations is that the courts of the State of New Jersey are bound to regard the defendant in this suit, notwithstanding his fraudulent Nevada decree, as the husband of the complainant, and as such charged with the duty of supporting her and subject to the action for non-support provided by the twenty-sixth section of our present Divorce act.

7. The second defence set up by the defendant in this suit if sustained is valid and effective even if it be assumed that the marriage relation still exists between the complainant and

the defendant, and that the defendant was guilty of the matrimonial offence of abandonment and non-support for which the present suit brought under section 26 of the Divorce act is the appropriate remedy.

The defendant appears to have made voluntary payments of $30 a week until December 19th, 1908, when he obtained his Nevada divorce. Since that time he seems to have paid little or nothing except possibly some amounts which have been forced from him by proceedings in this court. The complainant is forty-seven years of age. The only living child of her marriage with the defendant is a young man now about twenty-six years of age, who is married and works for the support of himself and his wife. The complainant practically has no property and seems to have no trade or capacity for earning money in any business in which she has had experience. The complainant was worn out and discouraged by the protracted litigation between herself and her husband, which commenced in March, 1909. In 1914 the defendant sent his son, the young man above mentioned, to the complainant, offering $400 for a release or settlement, the nature of which he described through the son. The complainant after conferring with her son, but without any advice from any other person, wrote out and delivered to the son for transmission to the defendant the following paper:

"PATERSON, N. J., Oct. 5th, 1914.

"*Agreement.*

"In consideration of four hundred dollars (the receipt of which is hereby acknowledged) in full settlement of all claims I may have against Geo. T. Lister I agree to discontinue at once all and any suit or suits against the said Geo. T. Lister.

"MINNIE LISTER."

As I understand the contention of counsel for the defendant, this paper is to be construed as a release of the complainant's claims which were advanced in the action then pending, this present action for maintenance, or perhaps also of all claims for support up to the date of the receipt. If it had a wider scope and undertook to discharge the defendant from all future liability to support his wife, the complainant, it would be very much harder to sustain it as a release from a wife to a husband

than when it be confined within the narrower limit above mentioned. I shall therefore briefly consider the question whether this release can be held in equity as discharging the husband from all liability in this present suit, and as effecting in fact a discontinuance of this suit—a dismissal of the complainant's bill.

At the very start it must be borne in mind that all contracts between man and wife are void in law, and in equity are only contracts *sub modo* and are entirely within the control of courts of equity, and are enforceable especially against the wife only to the extent to which they may be found equitable and fair. *3 Pom. Eq. § 1121; Demarest* v. *Terhune, 62 N. J. Eq. 663, 667.*

It would perhaps clear up this subject of the status of so-called contracts between man and wife if such transactions were not regarded as contracts even *sub modo*. A contract between a man and wife void at law may be deemed in equity as mere conduct—a mere transaction out of which arise equitable rights and equitable duties. Without, however, indulging in any metaphysical discussion, it is enough to recognize in this case that this paper produced by this husband cannot be enforced in a court of equity so as to accomplish what is unfair, unjust or oppressive.

There can be no doubt in my judgment that to permit this man who had so greatly wronged his innocent wife to escape from this present litigation and discharge himself from all costs and expenses of this suit, and to secure the dismissal of this bill, would be to permit him to practice extortion and oppression upon the woman whom he has wronged. It will be observed that no provision is made in this paper for the future support of this impoverished and deserted wife. The testimony of the wife shows that she was under great stress of pecuniary embarrassment and greatly discouraged in her effort to get justice from her derelict husband, and was tempted by the opportunity for temporary relief which was held out before her when she executed this paper. Under these circumstances she drew, partly at the dictation of her son, the so-called release, signed the same and delivered it to the son. The son delivered the paper to the father and brought back to the complainant the sum of $400

which had tempted her to attempt to perform an unwise and improvident act.

In my judgment the defendant's answer—his supplemental answer setting up this release—exhibits a contract which a court of equity will not enforce, and that therefore the wife is entitled to a decree for maintenance upon her bill. The $400 paid by the husband will be credited upon any amount of past or future alimony or suit money which the court may order the husband to pay to the wife. The details may be arranged upon settlement of the decree.