JAMES A. THOMPSON, petitioner,

*v.*

ETHEL PRINCE THOMPSON.

[Submitted March 15th, 1918. Decided April 5th, 1918.]

1. A foreign decree of divorce is not entitled to recognition under the full faith and credit clause of the federal constitution, unless the court had jurisdiction over the subject-matter and both parties. Service of process within the state is necessary to obtain jurisdiction over the defendant, unless the matrimonial domicile is in the state, when jurisdiction may be had by substituted service.

2. A foreign decree of divorce is not entitled to enforcement on the principles of comity, unless the court obtained jurisdiction in the manner, and in substantial conformity with the requirements, for acquiring jurisdiction in such cases in this state, *i. e.*, the plaintiff for the two

years next preceding the commencement of the action must have been a *bona fide* resident of the state in which the divorce was obtained, except in causes for adultery.

3. A foreign decree of divorce granted for a cause which occurred while the parties resided in this state and the defendant went into another in order to obtain it, is without force or effect.

4. The rule of public policy established by the Divorce act is applicable to foreign divorces either *a vinculo* or *a mensa et thoro*.

5. The jurisdiction of a foreign court over the parties or subject-matter may be inquired into and determined by the court in which the judgment is sought to be enforced. An adjudication by a foreign court that it has such jurisdiction is of no evidential force in determining whether such jurisdiction existed.

6. A husband's domicile, in legal contemplation, is the domicile of the wife, and is unchangeable by her, except with his acquiescence or consent, or for such misconduct on his part, inimical to the union, as justifies her in selecting another. Whether such justifying cause existed is to be determined, upon evidence, by the tribunal in which a foreign judgment of divorce is offered.

On petition for divorce *a vinculo* for desertion.

*Mr. Nelson B. Gaskill* and *Mr. Henry Crofut White,* for the petitioner.

*Mr. John W. Ockford,* for the defendant.

BACKES, V. C.

The parties were married at Peekskill, New York, April 19th, 1913, and went to Montreal to live. In February, 1914, they moved to Trenton, where they set up housekeeping, and where the petitioner engaged in business. In May the defendant visited her former home in Poughkeepsie to consult her family physician regarding her pregnancy. It was understood that the visit was to be of short duration, but by mutual understanding it was extended from time to time and finally it was arranged that she should stay until after the baby was born. In the meanwhile, the petitioner spent week-ends with her and was constantly in communication by mail and telephone. After she recovered from childbirth the defendant showed no inclination to rejoin her husband, although frequently importuned to do so,

and she did not yield until December 20th, when she returned with him to their apartment in Trenton. After getting supper together they retired to separate bedrooms for the night. In the morning the petitioner found that his wife had fled with the baby and luggage. She returned to Peekskill, and, immediately, through her attorneys, made overtures for a separation. These being rejected, she, on January 15th, began an action in the supreme court of the State of New York, for the county of Westchester, for a separation from bed and board, on the grounds of cruel and inhuman treatment. Service of process within the state being unobtainable, substituted service, conformable to the code and pursuant to an order of the court, was made upon the petitioner, personally, in this state. The suit was undefended, and on July 24th, 1915, the court, upon a finding that the defendant "has cruelly and inhumanly treated his wife," decreed that "the said plaintiff and defendant be separated from bed and board forever." After the defendant left so suddenly, and up until long after she had brought her suit, the petitioner made strenuous efforts to reconcile her and to bring her to a sense of duty, but she remained obdurate. · The separation decree was based upon the unsupported testimony of the defendant, which discloses not even a modicum of proof of the charge, and the only way to account for the defendant's conduct is that she had been reared in luxury, was highly temperamental, and could not, or would not, accommodate herself to the modest, though comfortable, surroundings her husband's moderate income provided, and that the duties of wife and the environments of housekeeping were uncongenial and distasteful. The evidence shows a clear case of willful, continued and obstinate desertion for the statutory period, and the petitioner is entitled to a divorce unless the desertion was tolled by the New York decree.

In the answer to the petition, after admitting the marriage, it is alleged that before the commencement of this suit the defendant brought her action as above stated; that the court had jurisdiction over the subject-matter, and that the defendant was then, and had been for upwards of six months next preceding, a bona fide resident of the State of New York; and that service was made and that judgment was entered as hereinbefore related.

A duly exemplified copy of the judgment roll was offered in evidence, and the sole contention is that it is plenary proof of the plea, under article 4, section 1 of the constitution of the United States, and upon principles of interstate comity. I am of the opinion that it has not the support of either.

1. The judgment is manifestly not entitled to recognition under the full faith and credit clause of the federal constitution, because the foreign court had not jurisdiction over both of the parties, nor over the matrimonial domicile. Service of process upon the defendant within the confines of the state is an essential requisite (*Haddock* v. *Haddock, 201 U. S. 562*) unless the matrimonial domicile is in that state, when jurisdiction may be had by substituted service. *Atherton* v. *Atherton, 181 U. S. 155: Thompson* v. *Thompson, 226 U. S. 551.* The rule is recognized in this state in *Doughty* v. *Doughty, 28 N. J. Eq. 581; Wallace* v. *Wallace, 62 N. J. Eq. 509;* reversed on facts, *65 N. J. Eq. 359; Watkinson* v. *Watkinson, 67 N. J. Eq. 142;* reversed on facts, *68 N. J. Eq. 632.* In the *Atherton Case* the husband sued his wife for divorce on the ground of desertion in the jurisdiction of the matrimonial domicile, and judgment was entered upon constructive service. The supreme court held the clause to be binding and precluded the wife from asserting that she left her husband on account of his cruel treatment and from setting up that she was enabled to acquire, and had in fact acquired, a separate domicile. It is still open to debate whether the rule would apply if the wife brought the action in the matrimonial domicile, in view of the husband's ability to establish a domicile elsewhere, at will, although it is strongly intimated in the opinion that it would. In the case of *Harding* v. *Harding, 198 U. S. 317,* cited by the defendant in support of the proposition that a divorce *a mensa et thoro* is an absolute bar to an action for divorce *a vinculo* on the ground of desertion, the supreme court held the clause to be operative because the court whose judgment was interposed as a bar had jurisdiction over the subject-matter and the parties. So much as to the conclusiveness of the judgment strictly under the constitution.

2. The judgment is not entitled to enforcement on the ground of interstate comity. Before the present Divorce act was passed,

the judicially declared policy of this state was to give full faith and credit to decrees of divorce pronounced by a court of another state, in which the complainant was domiciled and which had jurisdiction of the subject-matter of the suit, notwithstanding that the defendant did not reside within the jurisdiction of the court which pronounced the decree and had not been served with process therein, provided that a substituted service had been made in accordance with the provisions of the statute of that state and that actual notice of the pendency of the suit had been given to the defendant and a reasonable opportunity afforded to put in a defence thereto; and provided further, that the ground upon which the decree rested was one which the public policy of this state recognized as a sufficient cause for divorce. *Felt* v. *Felt (1899), 59 N. J. Eq. 606.* But in adopting the Uniform Divorce law in 1907 (*Comp. Stat. p. 2021*) the legislature established an entirely different rule of public policy regarding the force to be given to such foreign decrees. Section 33 provides:

"Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state, territory or possession of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections five, six and seven of this act. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state, territory or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state. a decree so obtained shall be of no force or effect in this state."

Section 7, which is the pertinent one, provides that jurisdiction for the purpose of divorce, whether absolute or from bed and board, may be acquired by substituted service:

"(a) When at the time the cause of action arose, the petitioner was a *bona fide* resident of this state, and has continued so to be down to the time of the commencement of the action, except that no action for absolute divorce shall be commenced for any cause other than adultery, unless the petitioner has been for the two years next preceding the commencement of the action a *bona fide* resident of this state."

This new rule was adopted to put a check upon "migratory divorces" and controls the present situation absolutely.

That a foreign court assumes jurisdiction over the subject-matter within its state, under the provision of its laws, and that its adjudication is there valid and effectual, are matters wholly irrelevant to the test fixed by our statute, which necessarily limits the inquiry to the ascertainment of whether the foreign jurisdiction was obtained in the manner and in substantial conformity with the requirements imposed by the legislature upon this court in acquiring jurisdiction in such cases, of which the principal and governing one is, except in causes for adultery, that the petitioner "has been for the two years next preceding the commencement of the action a *bona fide* resident of this state." The defendant was, admittedly, not a resident of New York for that period, and, consequently, the judgment is impotent here. It is possible to suppose a case where the rigidity of the statutory rule of comity would be relaxed, but this is not one of them.

Furthermore, the statute bars the decree from recognition because the divorce from bed and board was granted for a cause which occurred while the parties resided in this state, and the defendant went into New York in order to obtain it. If the charge of cruel and inhuman treatment had been well founded, full redress would have been available to the defendant in this court, but instead of seeking relief here, she forthwith, after separating from her husband, instituted her action in New York. That her program at the time of the separation was to be rid of him and to bring an action to that end, if necessary, there can be little doubt. While it is true that she returned to the place where she had been previously harbored for seven months, it is a fair inference that she was bent upon a divorce and that her return to New York was incidental to its accomplishment. Her conduct was in fraud of our law. The case is within the statute. The term "in order to obtain a divorce" is not quite so limited to a case of actual intent and purpose as if the phrase had been "for the purpose of obtaining a divorce." *Lyon* v. *Lyon, 68 Mass. (2 Gray) 367.* It is within the power of the state to forbid the enforcement of such a decree. *Andrews* v. *Andrews, 188 U. S. 14.*

It is argued that the rule is not applicable to foreign divorces from bed and board and that the legislation was intended to thwart convenient methods to absolute divorces only, but I can see no merit in this contention, and, indeed, the language of the statute, which in the jurisdictional feature embraces both kinds of divorce, is a complete answer. The mischief aimed at by the legislature is as potential and baneful in the one as in the other, differing only in degree and results. Both strike at the very vitals of that holy institution which is the foundation of the family and of society and whose influence has been so profound upon the morals and civilization of the people, in that one as effectually releases the couple from their solemn undertakings to dwell in unity and to faithfully discharge their marital duties and obligations as the other, differing only in the added quality in the one, whereby the parties are free to form other alliances, which in some instances may be an aggravation, while in others a blessing. It is of far greater concern to the welfare of the state, it seems to me, that the parties be held to a strict accountability in regard to their duties and obligations arising out of the union, than is the mere adjustment of their status in its relation to society and property, and it indeed would be strange that the legislature, in its effort to regulate the important subject of marriage, should include one form of divorce and not the other. See *Ditson* v. *Ditson, 4 R. I. 87.*

3. The decree is invalid, because the court did not have jurisdiction over the subject-matter upon which it pronounced judgment. In passing, it may be said that the judgment was not obtained by any actual fraud practiced upon the court, because all the facts attending her domicile in this state and her departure therefrom and her then abode were fully and truthfully set forth by the defendant in her complaint, so that the single question is whether the court rightfully assumed jurisdiction. It is a fundamental principle of general jurisprudence that a divorce can be granted only in the state wherein the status on which it operates has a *situs.* And it is also entirely settled that the jurisdiction of the adjudging court, whether over the parties or the subject-matter, may be inquired into and determined by the court in which the judgment is sought to be enforced. *Fairchild*

v. *Fairchild, 53 N. J. Eq. 678; Thompson* v. *Whitman, 18 Wall. 457; Wisconsin* v. *Pelican Ins. Co., 127 U. S. 265; Andrews* v. *Andrews, supra; German Savings Society* v. *Dormitzer, 192 U. S. 125; National Bank* v. *Wiley, 195 U. S. 257; Wallace* v. *Wallace, supra; Watkinson* v. *Watkinson, supra.* Under the New York code a separation may be granted from bed and board forever for cruel and inhuman treatment (section 1762) where the parties were married within the state and the plaintiff is a resident thereof when the action is commenced (section 1763), and a married woman is deemed a resident if she dwells within the state, although her husband resides elsewhere. Section 1768. And it is there held that the "residence" required of the plaintiff is synonymous with "domicile," and that "dwells," as used in section 1768, neither adds to nor subtracts from that meaning. *Barber* v. *Barber, 89 Misc. 519; DeMeli* v. *DeMeli, 120 N. Y. 485.*

The inquiry then resolves itself into whether the defendant acquired a new domicile in New York, by which she carried the *res,* or a part of it, with her. The husband's domicile undeniably was in this state, which, in legal contemplation, was also that of the wife, and was unchangeable by her, except with his acquiescence or consent, or for such misconduct on his part, inimical to the union, as justified her in selecting another. *Tracy* v. *Tracy, 62 N. J. Eq. 807; In re Geiser Will, 82 N. J. Eq. 311; Cheever* v. *Wilson, 9 Wall. 108; Hunt* v. *Hunt, 72 N. Y. 217.* Whether there was such justification is purely a question of fact to be passed upon by the trial court, in which the judgment is offered, in determining whether a separate domicile had been acquired, and in this determination the foreign adjudication that the petitioner had been guilty of cruel and inhuman treatment and that the defendant was justified in the separation and that she acquired a domicile within the state, and that the court had jurisdiction over the subject-matter, has no evidential force whatever. Such, in effect, is the ruling of the supreme court of the United States, in the cases hereinbefore cited; and it was so declared by this court in the *Watkinson Case.* Chief-Justice Marshall, speaking for the supreme court, in *Rose* v. *Himely, 4*

*Cranch 241 (269)*, said: "Upon principle, it would seem that the operation of every judgment must depend on the power of the court to render that judgment; or, in other words, on its jurisdiction over the subject-matter which it has determined. In some cases that jurisdiction unquestionably depends as well on the state of the thing as on the constitution of the court. If by any means whatever a prize court should be induced to condemn, as prize of war, a vessel which was never captured, it could not be contended that this condemnation operated a change of property. Upon principle, then, it would seem that, to a certain extent, the capacity of the court to act upon the thing condemned, arising from its being within or without their jurisdiction, as well as the constitution of the court, may be considered by that tribunal which is to decide on the effect of the sentence." The rule laid down in *Fairchild* v. *Fairchild, supra,* is not in conflict with this principle. In that case a Kansas divorce was offered in bar to a bill for maintenance, and the learned chief-justice, in delivering the opinion of the court, used this language: "By the statute of that state the plaintiff in an action of divorce is required to have been an actual resident in good faith of the state for one year next preceding the filing of his petition. It was, therefore, necessary for the Kansas court, before taking up the consideration of appellant's case upon the merits, to determine whether he had been an actual resident of the state in good faith for at least a year next preceding the commencement of his action, and that decision, unless procured by fraud, is conclusive, not only in Kansas but in every other jurisdiction where the validity of the judgment comes in question." The Kansas court had jurisdiction over the parties and over the subject-matter of the litigation; the defendant, although not a resident of that state, having voluntarily appeared and defended the action. In disposing of two grounds of attack upon the jurisdiction, one of which is mentioned in the quotation, the court held that they were defences which should have been interposed in the Kansas suit, and that the defendant having failed to plead them, the question of jurisdiction was *res judicata.*

As no testimony was offered to justify a severance of the joint domicile, and as, as a matter of law, the husband's domicile in New Jersey is the domicile of the wife, it follows that the New York court was without jurisdiction, and that its judgment is void. A decree of divorce will be advised.