The complainant, on February 10th, 1926, filed her bill in this court alleging cruelty and praying for a decree of separate maintenance. She obtained decree against defendant November 7th, 1928.
On February 23d 1932, the defendant filed suit for divorce from complainant in the second judicial district court of Nevada, alleging that complainant and he were separated since January 2d 1926, since which time they did not live or cohabit together. As ground for divorce he charged that "defendant has carried on a long, continued and systematic course of unkind and extremely cruel treatment toward the plaintiff, the particulars whereof may be obtained by the defendant upon filing and serving a request for a bill of particulars." The complaint embraces the same period and subject-matter covered in the suit by the wife against him in this state upon which a decree of separate maintenance had previously been predicated by this court on November 7th, 1928.
Service of the complaint and summons in the Nevada suit having been made upon her, complainant filed her bill on March 18th, 1932, attacking such proceedings and alleging that the defendant by "fraud and suppression" is attempting to induce the court of the State of Nevada to adjudicate that "the residence of the defendant has been in the said state and within the jurisdiction of said court, for more than six weeks immediately preceding the commencement *Page 5 
of the proceedings for divorce, and that his intention is to remain permanently in said State of Nevada," while the truth is that the defendant intends immediately to return to Newark after procuring his said divorce, and further challenging the Nevada jurisdiction over the subject-matter of the suit which was for a cause which occurred while the parties resided in this state.
Complainant prays for injunction restraining the defendant from prosecuting the suit in the Nevada court, and in the event of decree obtained in said court, that the defendant be enjoined from setting up such decree against complainant upon the ground of fraud practiced on the foreign jurisdiction.
An order to show cause with ad interim restraint was issued out of this court restraining and enjoining defendant from proceeding with the action in Nevada.
The defendant admits that he received the order of the court restraining and enjoining him and that the effect thereof was explained to him by counsel in Nevada, and the evidence satisfies me that the same was thoroughly understood by him. Notwithstanding the restraint and injunction, he proceeded in his Nevada suit to final decree. He married again and shortly thereafter returned to the city of Newark to live.
The matter is now before me on contempt for violation of the preliminary restraint and for final hearing. The evidence adduced is, that before defendant left Newark for Reno, Nevada, he endeavored to enlist the aid of Mr. Weinberg, complainant's solicitor, to induce his wife to sign a power of attorney to a Nevada lawyer empowering him to appear in the suit which he intended to commence. He told Weinberg that he wanted to be free. Weinberg refused and told the defendant to take the matter up with his wife. Later, sometime between Christmas and the new year 1931, the defendant called on complainant at the home of a Mrs. Kravitz, with whom she lived, and said: "I am going to Reno to get my divorce. I left a paper with Mr. Weinberg and I want you should go up and sign the paper. This would *Page 6 
save me time and money and we both could get free and get married again." She refused to sign. About January 1st, 1932, he started for Reno, Nevada, and after making some stops on the way, arrived there about January 10th, 1932.
The jurisdictional residence period in Nevada being six weeks, he promptly commenced his suit after the expiration of that period on February 23d 1932, and after the suit was started, again endeavored through William Stalford, an attorney, to obtain the signature of his wife to a power of attorney, but failed.
In order to prove bona fide residence in Nevada, his testimony was that he secured a position as sales manager of a photographic establishment in Reno; that he joined the Jewish congregation there; transferred his membership in the Odd Fellows Lodge; became a member of the Reno chamber of commerce; opened a bank account in the Reno National Bank and rented a post office box, all within a few weeks after his arrival. Normally, a person intending to make Nevada his permanent residence would do many, if not all of these things. The abnormal haste, however, with which he acted in all these matters and in starting suit six weeks to the day after his arrival, leads me to the conclusion that he did them upon the advice of his counsel for the purpose of making evidence in anticipation of his present situation which he foresaw because of what had transpired before he left for Reno. He had notice that his Nevada suit would be resisted. Upon analysis, this evidence loses probative force for the reason that he was not a photographer, and knew nothing of the art. He was a jewelry salesman. He was a Hebrew, and so would attend a synagogue, even though his stay was temporary. Lodge membership is readily transferable. It is common knowledge that chambers of commerce elsewhere seek and admit to membership only such persons as have for a reasonably long period of time been engaged in a profession or business and attained not only a measure of success therein, but who, by a display of civic interest in community life make membership desirable. Perlman was *Page 7 
unknown to Reno. His membership certainly carried no affluence with it, and was of no value in assisting that body to carry forward the usual objects of such an organization, namely, to promote business, industry and community life, unless the granting of divorces is regarded as an industry in Reno.
The creditable proof is that defendant did not establish abona fide residence in the State of Nevada. His residence was nominal or pretended for the express purpose of obtaining a divorce. It was as fraudulent as the ground he offered. He knew complainant had obtained a decree of separation in this state against him on the same ground.
In Fairchild v. Fairchild, 53 N.J. Eq. 678, the court of errors and appeals held that the only grounds upon which a judgment of a court of general jurisdiction can be disregarded in another state are, first, where the adjudging tribunal had no jurisdiction over the person against whom judgment was pronounced, or over the subject-matter of the litigation; and second, where the adjudication of the foreign court has been obtained by fraud.
Perlman made it plain before he left that he wanted a divorce in order that he could again marry. He promptly commenced his suit after the expiration of six weeks to the day, married again and then came back to Newark where he had lived before for a number of years. He had not the slightest intention of remaining in Nevada and making it his home, but on the contrary his sole object was to obtain an apparent residence there for the purpose of enabling him to institute divorce proceedings against his wife. He obtained his Nevada decree by withholding from that court the real fact or by the submission of false testimony, and in either case it was a fraud upon the Nevada court and destroys the validity of the decree. Magowan v. Magowan, 57 N.J. Eq. 322.
"A spouse commorant in Nevada but actually resident in New Jersey, has no more power as against the State of New Jersey to carry his status in respect of marriage, from the State of New Jersey into the State of Nevada so as to subject *Page 8 
such status to the power and control of the State of Nevada, exercised through its courts by an action quasi in rem, than he has to lift up a tract of land in New Jersey which he owns and transport it to the State of Nevada, so as to subject it to an action quasi in rem in a Nevada court. Where the res is land it is manifest that it cannot be moved out of the state where it lies. When the res consists of chattels it is equally clear that such res can be transported and located successively in very many states, and thus made subject to the power of such states exercised through courts, legislatures or other governmental agents. When the res is a status in respect of marriage, it can be transported in a certain way, viz., by transporting, or in other words, changing the residence of the party whose status is under consideration.
"The authorities I think all sustain the proposition that there is no principle of comity which interferes with the power of the State of New Jersey, in accordance with its well settled law, to deny the right of any court in Nevada to determine the status of the defendant in this case in respect of marriage, or to decree that he is an unmarried man unless he ceased to be a bona fide
resident of New Jersey and became a bona fide resident of Nevada." Lister v. Lister, 86 N.J. Eq. 30.
To render the Nevada divorce valid in this state, the foreign court in which the decree was granted must not only have jurisdiction over the parties, but also the subject-matter. The Uniform Divorce act of 1907 (2 Comp. Stat. p. 2041 § 33) bars the decree for divorce in Nevada from recognition because it was granted for a cause which occurred while the parties resided in this state and the defendant went to Nevada in order to obtain it. If the charge which he made of "extreme cruelty" in Nevada had been well founded, full redress would have been available to the defendant in this court, but instead of seeking relief here, he instituted his action in Nevada, and that with full knowledge that a decree for the same cause between himself and his wife covering the same period while they both resided here had been entered against him. He was determined to get rid of her *Page 9 
and his conduct was in fraud of our law and a fraud upon the foreign court. The statute referred to provides:
"Full faith and credit shall be given in all courts of this state to a decree of annulment of marriage or divorce by a court of competent jurisdiction in another state, territory or possession of the United States when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections five, six and seven of this act. Nothing herein contained shall be construed to limit the power of any court to give such effect to a decree of annulment or divorce by a court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this state shall go into another state, territory or country, in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state, or for a cause which is not ground for divorce under the laws of this state, a decree so obtained shall be of no force or effect in this state. P.L. 1907 p. 483."
In Lister v. Lister, supra, the Nevada decree of divorce obtained by the husband was declared to be void in view of the provisions of section 33 of the Divorce act of 1907. Vice-Chancellor Stevenson said: "The evidence in this case has satisfied this court that the defendant being an inhabitant of this state, went into the State of Nevada `in order to obtain a decree of divorce for a cause which occurred while the parties resided in this state,' * * * and the statute declares that `a decree so obtained shall be of no force or effect in this state.'"
Thompson v. Thompson, 89 N.J. Eq. 70, was a suit for divorce brought by the husband against the wife in this state. The wife left the husband in this state and went to New York, and while there made overtures to the husband looking to a separation, which were rejected. Whereupon, she commenced an action in the supreme court of New York for a separation from bed and board, on the grounds of cruel and inhuman treatment. Substituted service on the defendant having been effected and the suit undefended by the husband, the New York court decreed separation from bed and board. The defendant wife after admitting the marriage in her answer to the suit in this state, set up the decree of *Page 10 
separate maintenance. It was held by Vice-Chancellor Backes, that the New York decree was not entitled to enforcement on the ground of interstate comity. He said: "Before the present Divorce act was passed, the judicially declared policy of this state was to give full faith and credit to decrees of divorce pronounced by a court of another state, in which the complainant was domiciled and which had jurisdiction of the subject-matter of the suit, notwithstanding that the defendant did not reside within the jurisdiction of the court which pronounced the decree and had not been served with process therein, provided that a substituted service had been made in accordance with the provisions of the statute of that state and that actual notice of the pendency of the suit had been given to the defendant and a reasonable opportunity afforded to put in a defense thereto; and provided further that the ground upon which the decree rested was one which the public policy of this state recognized as a sufficient cause for divorce. Felt v. Felt (1899), 59 N.J. Eq. 606.
But in adopting the Uniform Divorce law in 1907 the legislature established an entirely different rule of public policy regarding the force to be given to such foreign decrees. * * * The statute bars the decree from recognition because the divorce from bed and board was granted for a cause which occurrred while the parties resided in this state, and the defendant went into New York in order to obtain it. If the charge of cruel and inhuman treatment had been well founded, full redress would have been available to the defendant in this court, but instead of seeking relief here, she forthwith, after separating from her husband, instituted her action in New York. That her program at the time of the separation was to be rid of him and to bring an action to that end, if necessary, there can be little doubt. * * * The case is within the statute. The term `in order to obtain a divorce' is not quite so limited to a case of actual intent and purpose as if the phrase had been `for the purpose of obtaining a divorce.'Lyon v. Lyon, 68 Mass. (2 Gray) 367. It is within the power of the state to forbid the enforcement of such a decree.Andrews v. Andrews, 188 U.S. *Page 11 14." Further, we held in Thompson v. Thompson, that the rule of public policy established by the Divorce act is applicable to foreign divorces either a vinculo or a mensa etthoro.
The provision of our statute above quoted has been given force and effect in Jung v. Jung, 85 N.J. Eq. 372; Lister v.Lister, supra; Hollingshead v. Hollingshead, 91 N.J. Eq. 261;Sechler v. Sechler, 94 N.J. Eq. 47; Garabrant v. Garabrant,95 N.J. Eq. 136; Feickert v. Feickert, 98 N.J. Eq. 444.
Where one of the parties seeks to destroy the marriage relation by a suit in a foreign jurisdiction, the right of this court, at the instance of the one who desires to preserve it against the other, to protect the marriage relation by its extraordinary process, although it is unable to make service of its jurisdictional process within the state, is clear. The spouse who is domiciled in the state, and who fears irremediable mischief to the marriage relation, is as much entitled to judicial protection as the owner of ordinary property situate within the state, and it is well settled that it is a matter of no consequence how the fact of the issuing of the injunction is brought to the knowledge or notice of the defendant. If he has notice or knowledge of it, his conscience is bound, and he is liable to the consequences of its breach to the same extent as if it had been actually served upon him in writing. Kempson v. Kempson, 61 N.J. Eq. 303;
affirmed by the court of errors and appeals, 63 N.J. Eq. 783.
The Nevada decree was fraudulently obtained, and the defendant is found guilty of contempt for violation of the injunctive order restraining him from proceeding in the same. The defendant will be enjoined according to the prayer of the bill and he will be sentenced to pay a fine and the costs of this proceeding and be committed to the custody of the sheriff of Essex county. He will be required to present the truth to the second judicial district court of Nevada and in good faith to urge that its decree be set aside. When that is shown to have been done and the fine and costs *Page 12 
have been paid, the defendant will be released from the custody of the sheriff.
The decree will be in accordance with the forgoeing conclusions.