(64 Misc. Rep. 366.)

### HALTER v. VAN CAMP et al.

(Supreme Court, Equity Term, Erie County. May, 1909.)

DIVORCE (§ 328*)—JURISDICTION—FOREIGN DECREE—VALIDITY.

Where a husband abandoned his wife, leaving her in New York, and became domiciled in another state, a decree of divorce there obtained by him, based on substituted service, by publication, of process on the wife, who remained domiciled in New York, and who had no actual notice of and did not appear in the action, was void.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. § 328.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Maria Halter against Sarah Van Camp and others. Findings ordered drawn for plaintiff.

John C. Hubbell, for plaintiff.

John E. Livermore, for defendant Elizabeth Metzler, otherwise known as Elizabeth Halter.

Lincoln & Smith, for the infant defendant Helen Metzler, otherwise called Helen Halter.

WHEELER, J. This action was brought by the plaintiff, claiming to be the widow of Christian Halter, deceased, who died intestate on the 17th day of August, 1908, seised of certain parcels of real estate described in the complaint, and alleging that as such widow she is entitled to dower in the real estate in question, and praying that the same may be admeasured and set off to the plaintiff.

The facts, as shown by the evidence in this case, disclose very peculiar marital complications. It appears that Christian Halter, the intestate, was married to the plaintiff in the year 1865 in the city of Buffalo. The issue of that marriage were a number of children, some of whom are now living and are named as defendants in this action. In or about the year 1881 Christian Halter left his home and went to Illinois, ostensibly in the pursuit of work, which he apparently obtained in that state. He left in New York his wife and children, who continued to reside here. Subsequently, and about the year 1882, Halter returned to this state, resumed his life here with his family, and after living here for the period of about eight months again left his family, going to Peoria, Ill. He left his wife, this plaintiff, and her children behind, and they have always continued to live in this state. It further appears that in the year 1882 Halter instituted proceedings in the circuit court of the state of Illinois to obtain a divorce from her upon the alleged ground of adultery. This action proceeded so that in the month of October, 1882, said Halter was awarded a decree of absolute divorce from the plaintiff.

The judgment roll in that action was put in evidence in this case, and, from it, it appears that the plaintiff was never personally served with process in that action, either within or without the state of Illinois, but that such service of process as was made upon her was made by a substituted service thereof, by the publication of notice of the pendency of the suit, and the mailing of notice addressed to her. We shall assume, for the purposes of this action, that the requirements of the statutes of the state of Illinois were observed as prescribed in such cases. The plaintiff in this action, and the defendant there, however, did not appear in the Illinois action, and testified in this case that she never had any actual notice of the commencement of the Illinois divorce suit. After continuing to live in the state of Illinois for a period of about five years after the granting of the divorce in that state, Christian Halter again returned to New York, but did not resume his marital relations with his former wife. In the year 1895, he, however, married in this state the defendant Elizabeth Metzler, and continued to live with her as his wife up to the time of his death. By this second marriage he had one daughter,

Helen Metzler, otherwise known as Helen Halter, a minor, and also one of the defendants in this action.

Elizabeth Metzler (or Halter), the second wife, was a witness in this case. She testified she was married in Germany about the year 1888; that her husband eloped with another woman and abandoned her; that she subsequently, and about the year 1889, came to America, and after her arrival here became acquainted with and married Christian Halter, as above stated. She testified she had not heard of or from her former husband since leaving Germany. The question presented is whether the minor, Helen Metzler (or Halter), has any interest as heir at law in the real property left by her father, Christian Halter.

It does not appear, so far as the testimony given on this trial is concerned, whether Christian Halter had any knowledge or not of the existence of the former husband of Elizabeth Metzler, his second wife. Let us assume, however, that he was ignorant of that fact, and acted in good faith in contracting his second marriage. If the Illinois decree of divorce were valid, and Halter in good faith married Elizabeth Metzler in ignorance of the fact that she already had a husband living, then, under the provisions of section 1745 of the Code of Civil Procedure, the issue of the second marriage would be deemed the legitimate child of her father, and entitled to take as one of his heirs at law. We think, however, the Illinois decree void, and one which this state will not recognize.

We must assume, for the purposes of this action and upon the evidence as it stands, that Christian Halter, at the time he instituted proceedings for divorce in Illinois, was a bona fide resident of and domiciled within the state of Illinois. We are justified in finding such was the case from the fact that for about five years after the granting of that decree of divorce Halter continued to reside in that state. Nevertheless, such was not in law or in fact the domicile of his first wife, the plaintiff in this action. She continued to live in this state. She was not invited to live with him in Illinois. He, in fact, abandoned her when he went to Illinois to live the second time. He understood and intended she should continue to reside here. He wrote to her at one time that if she would send on to him a couple of their children he would support them, and two of them in fact went to him in Illinois. But he made no such provision for, and gave no such invitation to his wife, the plaintiff, and she continued to live in the state of New York, and to care for herself and others of his children, receiving no aid or assistance from him. We therefore find the actual and legal residence of the plaintiff continued to be New York.

Illinois was not the domicile of matrimony, and under the authority of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, we are constrained to hold the Illinois decree invalid. In that case, the husband and wife being domiciled in New York, the husband left the wife, acquired in good faith after a lapse of years a domicile in Connecticut, and obtained in that state, and in accordance with its laws a judgment of divorce based on constructive and not actual service of process on the wife, who meanwhile remained domiciled in New York and never appeared in the action. In an

action subsequently brought by the wife in this state, it was held by the United States Supreme Court that the Connecticut divorce was not entitled to enforcement by the State of New York. We are of the opinion the Haddock Case disposes of the one now under consideration, and that the Illinois decree is invalid.

Under the facts as shown we therefore hold that Helen Metzler, otherwise known as Helen Halter, and her mother, Elizabeth Metzler (or Halter), have no interest in the real estate described in the complaint, and that the plaintiff's right of dower as the widow of the intestate remains.