STELLA J. SILVEY, Appellant, v. ALFORD B. SILVEY, Respondent.

Kansas City Court of Appeals, November 1, 1915.

1. **FOREIGN JUDGMENTS: Jurisdiction of the Person: Res Adjudicata: Collateral Attack.** In a suit by a wife against her husband for separate maintenance, the latter pleaded *res adjudicata* based upon a judgment of divorce rendered in his favor by an Arizona court prior to the bringing of plaintiff's suit. The Arizona decree was upon constructive service. The record of that court showed upon its face that publication was not made in accordance with the Arizona laws governing service by publication, and was not notice to the defendant therein. Hence, the Arizona court obtained no jurisdiction over the person of the defendant in the divorce suit (who is plaintiff here), and, therefore, said decree could be collaterally attacked, was not *res adjudicata*, and was no bar to plaintiff's suit.

2. ———: ———: ———: **Recitation of Due Service in Decree.** A recitation in a foreign judgment that due and legal service has been made upon defendant makes out a prima-facie case of proper service where only the decree itself is offered in evidence. But where the entire record of the case is introduced and the other parts of said record, of equal dignity and importing equal verity, show that the record of due service in the decree is untrue, then the recital in the decree is overthrown.

3. **PROCEDURE: Summons by Publication: Error in Name of Parties: Idem Sonans.** Service, in the case at bar, was had by publication against defendant as a non-resident. The order of publication as published gave plaintiff's first name as "Stella" and defendant's first name as "Alford" when their true names were "Estella" and "Alfred" respectively. *Held,* that as to the defendant, the one to be served, "Alford" is *idem sonans* with "Alfred." The law does not regard the spelling of names so much as their sound. By the doctrine of *idem sonans*, if two names, though spelled differently, sound alike they are to be regarded as the same. If the attentive ear finds difficulty in distinguishing the two names when pronounced they are *idem sonans*.

4. ———: ———: ———: **Want of Jurisdiction Over Person on Account of: Waiver by Appearing and Obeying Order of Court.** Without regard to the doctrine of *idem sonans*, the defendant waived the question of jurisdiction over his person

by submitting to, and paying, the court's judgment for alimony *pendente lite*.

5. **JUDGMENTS FOR ALIMONY PENDENTE LITE.** A judgment for alimony *pendente lite* is a final judgment from which an appeal will lie.

Appeal from Platte Circuit Court.—*Hon. A. D. Burnes,* Judge.

REVERSED AND REMANDED.

*A. D. Gresham* for appellant.

*Jas. H. Hull* for respondent.

TRIMBLE, J.—This is a suit for separate maintenance. The petition alleges that plaintiff was married to defendant in Platte county, Missouri, February 27, 1895, and lived with him, discharging all her wifely duties, until he deserted her and their daughter; that he has refused and neglected to provide for his wife and family leaving them without money and the wherewithal to procure the necessaries of life, although he is the owner of a certain described farm of one hundred and twenty acres in Platte county, Missouri, worth $18,000, a part of which was procured by their joint labor; that defendant is an able bodied man and in his vocation earns $75 per month. And plaintiff, being without funds to prosecute the suit, asked the court to allow her $100 attorney fees and $100 suit money as alimony *pendente lite* and prayed judgment for $500 and for a monthly allowance of $40 for separate maintenance.

The suit was instituted in Platte county, Missouri, January 14, 1914, and was brought by attachment on the ground that the defendant was a non-resident. Summons was by publication and the attachment writ was levied upon defendant's farm.

At the return term of the order of publication, defendant, limiting his appearance solely to the purpose of attacking the jurisdiction of the court over him, filed first a demurrer and then a motion to dismiss. The grounds of these attacks were because, as shown on the face of the petition and in the order of publication, plaintiff's name is stated to be *"Stella* J. Silvey" when her correct name is *"Estella* J. Silvey," and because defendant's name is given as *"Alford* B. Silvey" when his correct name is *"Alfred* B. Silvey." The demurrer and motion to dismiss being successively overruled, defendant, still limiting his appearance, filed an answer which consisted of three parts. The first was in the nature of a plea to the jurisdiction of the court over his person by reason of the above-mentioned difference in names. The second set up the plea of *res adjudicata* in that the matters herein sought to be litigated had been adjudged and determined by a decree of divorce granted to Alfred B. Silvey on August 30, 1913, by the Superior Court of Gila county, Arizona, in which the bonds of matrimony between the parties had been forever dissolved. The third branch of the answer was a general denial.

At this same term, March, 1914, the trial court heard plaintiff's prayer for alimony *pendente lite* and rendered judgment in plaintiff's favor for $100 for attorneys fees, $50 as suit money and $25 per month for plaintiff's support during the pendency of the suit, payments thereof to begin April, 1914. The cause was then continued to the next, or September, term.

Defendant saved no exceptions to the rendition of this judgment, took no appeal therefrom but, on the 4th of April, 1914, in vacation, paid into court the various amounts called for in said judgment.

At the September term, plaintiff filed a reply attacking the validity of defendant's Arizona divorce decree on two grounds, namely: (1) That the Superior Court of Gila county, Arizona, had no jurisdic-

tion. 2. That the decree of divorce was null and void on account of Alfred B. Silvey's fraud in the concoction and procurement thereof.

The grounds upon which the reply attacked the jurisdiction of the Arizona court were: 1. That said suit was based on a publication which was not a lawful notice to the defendant therein (who is plaintiff in this suit), because it in no way stated or indicated the nature of the suit against her, and she had neither actual nor constructive notice thereof; 2. Because the petition on which the divorce decree was founded failed to state jurisdictional facts necessary to confer authority on the court to try said case.

The fraud alleged in plaintiff's reply is that the Arizona statutes required Silvey, in bringing his divorce suit against his non-resident wife, to make affidavit stating whether her residence was known or unknown, and, if known, he was required to mail her a copy of the summons and petition, but that, to avoid doing this, said Silvey falsely and fraudulently made affidavit that her residence was unknown in order to keep her from receiving notice of the divorce suit through the mail.

Defendant filed a motion to strike out parts of plaintiff's reply, which the court overruled. Defendant then filed a demurrer to said reply which the court also overruled. The cause was then continued to the next, or November, term of court.

At this term the parties appeared and the court first took up that part of defendant's answer constituting a plea to the jurisdiction based on the insufficiency of the order of publication in respect of the difference in the names hereinbefore referred to. The court decided this feature of the case adversely to defendant, holding that it had obtained jurisdiction over his person.

The court thereupon took up the other issue raised by the answer and reply, namely, the question of

whether or not the decree of divoŕce rendered in the Arizona court was *res adjudicata* between the parties and conclusive of plaintiff's right to any relief herein. As we understand the record, the court held that it was, and dismissed plaintiff's petition on this account. Plaintiff thereupon appealed.

It is still defendant's contention that the trial court acquired no jurisdiction over him in this case because of the aforesaid defect in the order of publication concerning the names of the parties. If this contention is good, there is no need of going further. Hence we dispose of it first.

With regard to the name of defendant, the one who was to be summoned, it seems to the writer that "Alford" is *idem sonans* with "Alfred." "The law does not regard the spelling of names so much as their sound. By the doctrine *idem sonans*, if two names, although spelled differently, sound alike, they are to be regarded as the same. Great latitude is allowed in the spelling and pronunciation of proper names, and in all legal proceedings, whether civil or criminal, if two names, as commonly pronounced in the English language, are sounded alike, a variance in their spelling is immaterial. Even slight difference in their pronunciation is unimportant; if the atteńtive ear finds difficulty in distinguishing the two names when pronounced, they are *idem sonans*." [Scarry v. Lumber Co., 233 Mo. 686, l. c. 689.] With regard to the name of the plaintiff, the one bringing the suit, there may be ground for saying that "Stella" is not *idem sonans* with "Estella." And yet the two names are so very closely alike both in use and in the pronunciation of ordinary speech that it seems to the writer that "Stella" is such a name as the eye and ear of those who know the person could not fail to recognize who it was that had brought the suit. Certainly plaintiff's husband could not. This is exemplified by the defendant in his deposition, for, when asked on direct examina-

tion what his wife's first name was, he replied "Stella," and not until he was again asked by his *own counsel* on cross-examination as to his wife's name did he give it as "Estella." And in his answers concerning his own first name he first gave it as "*Alford*" and afterward as "*Alfred.*" Under these circumstances it is difficult for the writer to avoid the thought that the defendant could not fail to know, on seeing the order of publication, who was sued and who had brought the suit. But without regard to the principle of *idem sonans,* and conceding that the order of publication was insufficient to bring defendant into court, the defendant, in our opinion, waived its insufficiency. If the court had obtained no jurisdiction over him, there was no authority in plaintiff to take depositions and yet defendant appeared in person and by counsel, without objection, and took part in the taking thereof. In addition to this, if the court had no jurisdiction over defendant's person, it had no power to render judgment against him for alimony *pendente lite.* But the defendant recognized the validity of such jurisdiction when he not only saved no exception to the rendition of said judgment and took no steps toward preserving his rights on appeal, but voluntarily submitted to said judgment *by paying the amount thereof in full.* A judgment for alimony *pendente lite* is a final one from which an appeal will lie. [State ex rel. v. Seddon, 93 Mo. 520.] Hence, the defendant waived any defects that may have been in the publication. [Baisley v. Baisley, 113 Mo. 544.]

Is the Arizona decree of divorce *res adjudicata* and, therefore, conclusive of plaintiff's rights? In order that this feature of the case may be clearly presented, it may be well to state these facts: It seems that in the year 1907 defendant herein rented out his Platte county farm and moved with his wife and family to Kerrville, Texas, where they resided until March,

1912. At this time, he, according to plaintiff's evidence, deserted her, and she had no knowledge of his whereabouts except that she received regular remittances of $40 per month from him, mailed at Kansas City, Missouri, the last of which was sent May 29, 1913. Plaintiff heard no more from him and did not know of his whereabouts until he filed his answer herein at the March term setting up the purported divorce he had obtained in Arizona, which had been obtained without her knowledge. The record in the Arizona case shows that the petition for divorce was filed July 17, 1913, nineteen days after he had mailed to his wife in Texas the last remittance from Kansas City. As stated before, in the affidavit made by him to get an order of publication, he swore that the residence of his wife was unknown to him.

We deem it necessary to notice only one of the grounds alleged by plaintiff in support of her contention that the Arizona decree can be collaterally attacked. That one is that the said court obtained no jurisdiction over her because the publication therein was fatally defective. If this is true, the judgment is not conclusive upon her rights herein. [Williams v. Williams, 53 Mo. App. 617, l. c. 619.] The alleged fatal defect is that no copy of the complaint was published and the notice that was published contained nothing to indicate in any way the nature of the suit. The statutes of Arizona provide that, in ordinary cases where personal service is obtained, a copy of the complaint shall accompany the summons, and if there be more than one defendant, a copy of the complaint shall be made out for each of them. In cases where service is sought to be made by publication, the statute says "summons shall be issued *as in other cases* and service shall be made by making publication *thereof* in some newspaper, etc." Inasmuch as "in other cases" a copy of the complaint must be annexed to or accom-

pany the summons and the whole served upon defendant, the statute relating to service by publication requires the publication of the complaint else there is nothing in the publication to inform the defendant of the nature of the suit brought against him or her as the case may be. Other provisions of the statute require that where the residence of a non-resident defendant is *known* to the plaintiff, he shall mail to the defendant, postage prepaid, a copy of everything to which a defendant in the case of personal service is entitled, and must make affidavit that he has done so. Thus it appears that the intent of the Arizona law is that the defendant shall personally receive a copy of the complaint if that is at all possible. How, then can it be said that the section regarding the publication of notice to a non-resident defendant, whose residence is unknown, means that a mere publication of the writ of summons itself without a copy of the complaint need be published? We do not think the statute means this, nor do we think such a publication constitutes notice.

Now, the record in the divorce case shows on its face that no copy of the complaint was published, nor was there anything in what was published that could, in the least degree, inform the defendant in the divorce case of the kind of suit brought against her. The publication required defendant to appear and answer the complaint filed against her, and stated that "a copy of which complaint accompanies this summons" but there was no publication of the copy, nor was there anything in the notice published to tell defendant whether the suit was on a promissory note or for divorce. A notice which fails to disclose in any way what sort of an action has been brought, or the grounds of the complaint the defendant therein is called upon to answer, would seem to be no notice whatever. How could a defendant appear and *answer* to a complaint in the absence of any information as to what he or she would be called upon to meet?

The defendant in the case at bar makes the point that since the decree itself says that "defendant has been duly served with summons" this makes out a prima-facie case of due and legal service. The case of Howard v. Strode, 242 Mo. 210, is cited in support of this contention. The recital in the decree that due and legal service had been obtained would doubtless do this, if only the decree *and no other part of the record showing the contrary* were in evidence. In the case cited, only the decree itself was introduced. At the top of page 226 of the Strode case, the court says the recital of due service in the decree makes a prima-facie case *"absent the entire record."* (Italics ours.) But, in the case at bar the entire record was introduced and it shows that nothing was in the notice published disclosing in any way what the suit was about, nor was a copy of the complaint published. In Cloud v. Inhabitants of Pierce City, 86 Mo. 357, the rule is announced that although the decree contains the recital that process has been duly served, yet this can be overthrown by showing by other parts of record, of equal dignity and importing equal verity, that such recital is untrue. Such is the situation in the case at bar.

It follows that since the publication in the divorce case was insufficient to give the Arizona court jurisdiction over Mrs. Silvey's person that judgment is not conclusive of her rights herein, and the defendant's plea of *res adjudicata* cannot prevail. This disposes of the appeal without going into the other grounds of attack made on the validity of the Arizona decree.

Plaintiff is entitled to try her case on the merits regardless of the Arizona decree, and, in order that she may do this, the judgment of the lower court is reversed and the cause remanded. All concur.