JONES v. BARTLETT et al. (No. 7586.)

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1916. Rehearing Denied Dec. 16, 1916.)

1. APPEAL AND ERROR ⬅⟶1011(1) — SCOPE — CONFLICTING EVIDENCE.
The finding of the trial court upon a direct conflict in the evidence is binding upon the court on appeal.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3988; Dec. Dig. ⬅⟶ 1011(1).]

2. DIVORCE ⬅⟶327—FOREIGN DIVORCE—FULL FAITH AND CREDIT—COLLATERAL ATTACK.
In spite of Const. U. S. art. 4, § 1, as to full faith and credit, a decree of divorce in one state may be attacked in the courts of another, if pleaded or presented therein, by a showing that the court which rendered it had no jurisdiction.
[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 831–834; Dec. Dig. ⬅⟶327.]

3. EXECUTORS AND ADMINISTRATORS ⬅⟶178— ALLOWANCES TO WIDOW.
The reasonableness of allowances to the widow from the estate of the deceased husband is not affected by the question whether the estate will ever be sufficient to pay them.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 667, 668; Dec. Dig. ⬅⟶178.]

4. EXECUTORS AND ADMINISTRATORS ⬅⟶194(6) —ALLOWANCE TO WIDOW—INTEREST—WHEN TO BE TAXED.
Where the husband had secured a decree of divorce in another state, on published notice without sufficiently establishing residence, and on his death had made his mother independent executrix of the estate, and the former wife sued for her allowance, claiming the decree void, and it was adjudged to be void, she should not be allowed interest as a personal judgment against the executrix, since the executrix could not legally have paid her an allowance, or determined whether she was entitled to it, since that depended on the validity of the divorce decree.
[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 721; Dec. Dig. ⬅⟶194(6).]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Bettie Bartlett and another against Juliette A. Jones, individually and as independent executrix of the estate of Charlie Jones, deceased. Decree for complainants, and defendant appeals. Reformed and affirmed.

A. H. Mount, of Dallas, and Sherrill & Starnes and J. P. Yates, all of Greenville, for appellant. Lee R. Stroud, of Kaufman, and T. B. Ridgell, of Rockwell, for appellees.

RASBURY, J. This suit originated in Rockwall county, but by agreement of the parties the venue was changed to Dallas county. The suit is by Bettie Bartlett, appellee, formerly Bettie Jones, widow of Charlie Jones, deceased, against Juliette A. Jones, appellant, mother of Charlie Jones, individually and as independent executrix of the estate of said Charlie Jones. The purpose of the suit is to fix and set aside to Bettie Bartlett, appellee, as the widow of Charlie Jones, reasonable allowances in lieu of the specific statutory exemptions not found among the effects of her deceased husband, and to establish the amount so ascertained as an equitable lien against certain lands inherited by appellant from said Charlie Jones by the will of the latter, subject to the superior life estate of appellant therein. Due to the fact that by Charlie Jones' will he appointed his mother independent executrix of his estate, the suit is cognizable in the district court.

At the trial the following undisputed facts in substance were adduced: Charlie Jones and Bettie Browning were married in Rockwall county, Tex., February 5, 1911. A separa-

tion occurred either in July or August of the same year, Bettie returning to her parents. From the day of their marriage until the subsequent separation they lived at the home of Jones' mother in Rockwall county. On April 11, 1912, on the petition of Jones, he secured divorce from his wife in the district court of Murray county, Okl. The suit was based upon citation by publication. By the laws of Oklahoma the plaintiff in an action for divorce must have been an actual resident in good faith of the state for one year next preceding the filing of the petition and a resident of the county at the time of such filing. From the time of the marriage and the entry of the decree divorcing the parties, Bettie Bartlett, appellee, was a citizen of Rockwall county, Tex., and continuously during said period resided therein. On March 9, 1913, Jones died testate in Rockwall county, Tex. By his will he devised his entire estate, after payment of his debts and the cost of a monument to mark his resting place, wholly to his mother, Juliette A. Jones, appellant, naming her independent executrix. The will was probated, and appellant acquired the appointment as executrix, and took possession of his estate, and denied any interest therein to Bettie Bartlett, appellee. Jones' interest in the lands so devised to his mother was an undivided one-fourth interest in remainder in the estate of his deceased father in approximately 567 acres of land, a life estate therein having been by Jones' father devised to the latter's wife, remainder to his four children. After the death of Charlie Jones, and before commencement of the instant suit, Bettie married C. C. Bartlett, her present husband.

[1] There was a conflict in the evidence on trial of the case on the issue of whether Charlie Jones was a citizen of Murray county, Okl., or of Rockwall county, Tex. The evidence of appellant tended to show that Jones took up his residence in Murray county, Okl., in the year 1910, and continued to reside there until the granting of the divorce. His stay in Texas, including the period from the time of his marriage in February, 1911, to the separation in the following August, was claimed as temporary visits. The testimony of appellee tended to show that Jones had at all times been a citizen of Rockwall county, Tex., and that his stay in Oklahoma preceding his marriage was for his health, and that his stay after the separation was for the purpose of securing the divorce in order to avoid his marital obligations. Appellant adduced testimony tending to show that appellee received actual notice of the citation by publication, and appellee that she did not. The court, by its judgment, found all conflicting issues of fact in favor of appellee. There is evidence to support the finding, and accordingly we are bound thereby. Upon the evidence adduced the trial court held the Oklahoma divorce decree void as to appellee,

fixed the appellee's allowances at $6,000, and declared the same an equitable lien against the lands inherited by appellant from her son, Charlie Jones, subject to appellant's superior life estate, and ordered same sold. The court also rendered judgment against appellant individually for interest on the amount of the allowances from the date of her denial of appellee's right thereto to the date of judgment, amounting to $461. From the judgment outlined, this appeal is taken.

Counsel on both sides have, with great care and much particularity, briefed the issues raised in the court below. For the sake of brevity, however, we refrain from considering the propositions and counter propositions seriatim, but will confine ourselves to the issues as such.

[2] The important and controlling question arises over the action of the trial court in holding the divorce decree of the Oklahoma court void. If that decree is a valid one, appellee is not entitled to any allowance in lieu of exemptions, since she would not have been the wife of Charlie Jones at the time of his death. The position of counsel for appellant, stated in our own language; is in substance that by the provisions of section 1, art. 4, of the federal Constitution, commonly known as the full faith and credit clause, and by the rule announced in our own courts, the judgment of a sister state may not be collaterally attacked or the recitations thereof contradicted for the purpose of showing that it did not have jurisdiction to render the decree it did render. On this point a late and accepted authority states the rule to be that:

"When a judgment recovered in one state is pleaded or presented in the courts of another state, whether as a cause of action, or a defense, or as evidence, the party sought to be bound or affected by it may always impeach its validity, and escape its effect, by showing that the court which rendered it had no jurisdiction over the parties or the subject-matter of the action." 23 Cyc. 1578, and cases cited.

The author of the treatise in Cyc. from which we have just quoted is Mr. Black, the eminent author of Black on Judgments. It is further declared by the same authority that:

"Although many of the cases, particularly the earlier ones, refuse to permit a defendant, denying the jurisdiction of a court in another state, which rendered the judgment in question, to present evidence contradictory of the recitals in the record on the subject of jurisdiction, yet the preponderance of authority, following the lead of the United States Supreme Court, is now in favor of the doctrine that the record in such a case is not conclusive on this point, but may be directly controverted by extraneous evidence." 23 Cyc. 1580, and cases cited.

Much cannot be added to what is quoted, since, as stated, the rule is that the judgment may, on jurisdictional grounds, be attacked when sued on, offered as defense, or as evidence, which is, in the last two instances, but attacking it collaterally. From the other extract quoted it will also be seen

that on jurisdictional grounds the very recitals of the judgment may in that respect be contradicted. There is on analysis much of reason and justice in the rule, for, as said by our Supreme Court:

"It is a plain and undeniable principle that, to give any binding effect to the proceedings of a court, it must have jurisdiction of the person of the defendant and of the cause or subject-matter. The want of jurisdiction makes the judgment utterly void and unavailable for any purpose." Mitchell v. Runkle, 25 Tex. Supp. 132.

Applying the rule to the facts of the present case, it inevitably follows that the Oklahoma court was without jurisdiction to enter the decree, since by the finding of the district court of Dallas county he was not at any time a citizen of Oklahoma, but at all times of Rockwall county, preceding and during the pendency of the suit for divorce. It is to be remembered that the evidence of the appellant tended to show that Jones took up his residence in Oklahoma in the year 1910, which was prior to his marriage. Had that issue been sustained by the findings of the trial court, the Oklahoma court, waiving all other issues, would have had jurisdiction, on the theory that the legal residence of appellee would have followed that of her husband to Oklahoma. The court, however, as we have said, found that Jones had never in fact been a citizen for any period in Oklahoma.

Application of the rule cited was made in the case of Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154, where the facts were quite similar to those in the cases at bar. Morgan and wife both resided in Parker county from the year 1859 to Morgan's death in 1887. Prior to Morgan's death, and in 1870, he and his wife separated and discontinued their marital relations. In the year 1876, Morgan, having been denied a divorce in this state, obtained one in the state of Utah, without having acquired a domicile therein. Morgan again married. After his death a controversy, assuming the shape of a suit in trespass to try title, arose between his first and second wives as to the ownership of certain lands acquired by Morgan before his second marriage. One of the issues was the validity of the Utah divorce, and in the attack thereon evidence was offered tending to show that Morgan never was in fact domiciled there. Objections to the admission of the evidence on the ground that it was a collateral attack upon the judgment being overruled, the issue was presented on appeal, where it was held, first, that the judgment could be on jurisdictional grounds collaterally attacked, and, second, that the judgment was a nullity, for the reason that Morgan, the plaintiff therein, never had been domiciled in Utah, but at all times had his domicile in Texas. In League v. Scott, 25 Tex. Civ. App. 318, 61 S. W. 521, wherein writ of error was denied by the Supreme Court, it was also ruled that, in order to show that the court rendering the judg-

ment was without jurisdiction, the judgment could be collaterally attacked. Thus it seems clear that our courts do follow the later rule as stated in the text from Cyc.

Some distinction, as affecting the right to attack the judgment collaterally, is sought to be made between a suit for divorce and suits affecting property rights of the parties, and out of which may grow the rights of third parties, on the ground that a proceeding for divorce is quasi in rem, since it has some resemblance to those suits which only affect particular property and persons found in the jurisdiction of the court. It does seem that Legislatures and courts have so treated the marital status. However, and pretermitting a discussion of that subject, since the case of Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, our Courts of Civil Appeals, which have final appellate jurisdiction in such cases, have followed the rule of matrimonial domicile as therein announced. Montmorency v. Montmorency, 139 S. W. 1168, will be found to be a close analysis of Haddock v. Haddock, and its application to decrees awarding divorce upon citation by publication. By that opinion it is held that, generally speaking, the domicile of the husband is the domicile of the wife, and that a divorce granted upon citation by publication in the state of his domicile would be effective in that state, and, so granted, would, as to other states, depend upon their laws and the application of the rule of comity. By the same opinion it is further ruled that, where the husband abandons his wife in order to avoid his marital obligations, the state to which he flees does not become a new domicile of matrimony, for the reason that he does not, being a deserter of his marital obligations, take with him the marital relation, status, or res. Hence notice by publication would not bring the wife constructively before the court of such state on the theory that the domicile of the husband is the domicile of the wife. To the same effect is the holding of this court in Griffin v. Griffin, 54 Tex. Civ. App. 619, 117 S. W. 910. The difference in the facts in the instant case and those in Montmorency v. Montmorency, supra, is that in the case cited the domicile was actually acquired, but was ineffective to draw with it the matrimonial domicile, because wrongfully acquired, while in the case at bar domicile never was acquired. Hence it can be said with much greater force in this case that the matrimonial domicile at all times remained in the state of Texas, under the finding of the trial court that Jones never did acquire a domicile in Oklahoma. The rule being as stated, and the evidence being sufficient to sustain the finding of the court that Jones was a resident of Texas, there was no error in the court's holding that the Oklahoma divorce decree was void.

[3] It is also contended that the court erred in fixing appellee's allowances in lieu

of the specific exemptions at the sum of $6,000, for the reason that appellee's ultimate interest in the estate of her deceased husband is not probably that much, in view of the evidence relating to the value of the estate. As we have said at another place in this opinion, appellant has a life estate in all the lands owned by appellee's husband at his death, superior to appellee's allowances which cannot be disturbed. If at the conclusion of her life estate, or pending her use of the lands, they will not sell for sufficient to pay such allowances, the same will be reduced in that proportion. The allowances are reasonable. Whether the estate will ever pay them does not constitute error in their allowances, nor affect their reasonableness.

[4] It is further contended that the court erred in rendering judgment against appellant personally for $461. Said sum represents 6 per cent. per annum interest on $6,000, the amount of appellee's allowances, from the date of filing the suit to the date of the court's judgment. This sum was awarded on the theory that appellant had wrongfully withheld the estate of appellee, consisting of the allowances, and that appellant was liable for so doing as in case of money or property wrongfully withheld. While it is true that appellant was independent executrix of the will of Jones, and hence free from interference on the part of the probate court, in the ordinary administration of the estate, at the same time we seriously doubt whether the executrix could have made an allowance in lieu of exemptions which would have been valid or binding on either party, save in case of mutual agreement. The appellant could not have assumed the authority to declare the Oklahoma decree void, since that is a judicial function, to be exercised by a court of competent jurisdiction. Neither could she, in our opinion, have determined what were reasonable allowances, since that is also a judicial function, to be exercised exclusively by the probate courts, and not to be exercised by individuals, in the capacity of an independent executrix. If there was no right to fix and create the estate on the part of the appellant, she as a consequence could not deliver same, because it was not created until the judgment in the present case was entered. Accordingly we conclude the court erred in rendering personal judgment against appellant for $461, as entered.

There are a number of assignments arising on the pleading and the admission of testimony, but the issues so presented become immaterial, in view of our conclusion that the Oklahoma divorce decree is void.

The judgment in this case should bear interest from the date of same until its satisfaction in full or otherwise is had by exhausting Jones' estate. The personal judgment against appellant for $461, as said, is erroneous, and the judgment in that respect is reversed, and rendered for appellant. As reformed, the judgment will be affirmed.