RICHMOND et al. v. SANGSTER. (No. 1563.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 5, 1919. On Motion for Rehearing, Jan. 22, 1920.)

1. DIVORCE ⬡═══326 — COLLATERAL ATTACK ON FOREIGN DECREE.

Decree of divorce obtained in a foreign state may be collaterally attacked to show that the court which rendered it had no jurisdiction, even though it recites all necessary jurisdictional facts.

2. DIVORCE ⬡═══329—FOREIGN DECREE PROCURED BY FRAUD ON SUBSTITUTED SERVICE VOID.

Where wife left husband in Texas, and, going to Illinois, sued him for divorce, and citation by publication was based on false affidavit that he could not be found, the substituted service was insufficient; and, where by the statutes of Illinois the wife was required to

have transmitted to defendant husband a copy of her petition, and by fraud induced the clerk to send copy to a post office where it would not be received by her husband, there was such a fraud on the jurisdiction of the Illinois court as to void wife's divorce.

On Motion for Rehearing.

3. DIVORCE ⬡═══329—VALIDITY OF FOREIGN DECREE DEPENDS ON ACCURACY OF AFFIDAVIT FOR SUBSTITUTED SERVICE.

The validity of a decree of divorce, procured in the Illinois courts by a wife who left her husband in Texas, depended on the truthfulness of the facts stated in the wife's affidavit for substituted service upon the husband, rather than upon the good faith of the wife or her attorney in making the affidavit.

4. HUSBAND AND WIFE ⬡═══3(1)—DOMICILE OF HUSBAND NOT FIXED BY WIFE.

In Texas an erring wife, by leaving her husband, cannot fix his domicile at the place of her own residence, to enable her, after removal to a foreign state, to make accurate affidavit of his residence there in her divorce suit, based on substituted service.

5. ATTORNEY AND CLIENT ⬡═══86—ATTORNEY MAY STIPULATE AS TO FACTS TO BE ESTABLISHED.

Attorneys are authorized to stipulate concerning any facts to be established by the evidence.

6. DIVORCE ⬡═══327 — NO JURISDICTION IN COURTS OF STATE REMOVED TO WITHOUT INTENTION TO REMAIN.

A wife's act in merely going to another state to secure divorce, and in residing there the required length of time, but without any intention to remain permanently or indefinitely, is not sufficient to give the courts of such state jurisdiction of her divorce proceedings.

7. JUDGMENT ⬡═══820 — COLLATERAL ATTACK ALLOWED ON FOREIGN JUDGMENT PROCURED BY FRAUD ON JURISDICTION.

A judgment in an action in rem or in personam, procured in a court of foreign jurisdiction by willful fraud upon the jurisdiction, may be collaterally attacked.

8. DIVORCE ⬡═══330—VOID FOREIGN DECREE OBTAINED BY FRAUD OF WIFE NOT VALIDATED BY HUSBAND'S VISITS TO WIFE.

Divorce decree of a foreign court in favor of the wife, procured through her fraud and falsehood, was not vitalized and validated by the act of the husband, never made a party to the suit, and who knew nothing of the action until after rendition of the decree, in subsequently visiting the wife after her return from the foreign state, and by failing to go there and attack the judgment because of fraud.

9. APPEAL AND ERROR ⬡═══281(1)—NO AVOIDANCE OF STIPULATION IN ABSENCE OF MOTION FOR NEW TRIAL BELOW.

Where no effort was made in the trial court by motion for new trial to set aside a stipulation as improvident, the effect of the stipulation cannot be avoided in the Court of Civil Appeals.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Suit by Matilda Richmond and another against John C. Sangster. From judgment for defendant, plaintiffs appeal. Affirmed.

H. E. Hoover, of Canadian, and R. E. Stalcup, of Dalhart, for appellants.

F. P. Works, of Amarillo, C. D. Works, of Hansford, Newton P. Willis, of Canadian, and Tatum & Stron, of Dalhart, for appellee.

HALL, J. Appellant, joined pro forma by her second husband, H. E. Richmond, sued appellee, Sangster, alleging, in substance, that Mrs. Richmond and appellee were married about the year 1883; that their marriage relation continued until the 1st day of October, 1914, when they were legally divorced, and that after said date she married her coplaintiff, H. E. Richmond; that during the existence of the marriage relation between appellant and appellee they accumulated community property of the estimated value of $40,000, consisting of lands in Hansford and Sherman counties, real estate in Dalhart, Tex., and certain personal property, consisting of cattle, horses, sheep, hogs, farming implements, etc. She alleges that appellee has been disposing of the property since they were divorced, prays for the appointment of a receiver, for the issuance of a writ of injunction, and that upon a final hearing she have partition of the community property, and in the alternative that she have judgment against defendant for a sum of money equal to one-half the value thereof. Appellee answered by general demurrer, general denial, and specially denied that the marriage bond existing between himself and the appellant had ever been dissolved; that if the circuit court of Cook county, Ill., or any other court, ever assumed to divorce them he had no knowledge of the proceedings, and that no legal service thereof or notice of such proceeding by legal process or citation was ever issued or served upon him according to law, and that said court had no jurisdiction to render a decree of divorce; that any such attempted decree is of no force or effect on account of fraud practiced by the said Matilda Richmond, in its procurement and the lack of jurisdiction in the court so attempting to grant such divorce. The answer sets out the substance of certain articles of the statute of Illinois applicable to the case, and alleges that Matilda Richmond, being charged by law with knowledge of the provisions of the statute of Illinois, falsely and fraudulently alleged in the petition for divorce, and falsely and fraudulently swore before the court in procuring said divorce, that he deserted her on or about May 15, 1912, and absented himself from her without any reasonable cause for a space of two years, when she well knew that appellee had all the while remained as her husband in their home, and that she willfully abandoned and deserted him without any reasonable cause; that she falsely and fraudulently alleged in her petition, and swore upon the witness stand, that she was an actual resident of Cook county, Ill., and had been for two years prior to the filing of her suit, when she knew that she was not such resident, but was merely a transient, and had gone to Illinois for the purpose of procuring a divorce; that, having left her husband without cause, her domicile remained with him in the state of Texas, and for such reason the court had no jurisdiction over her or her husband for the purpose of divorce; that she further fraudulently concealed from the trial court of Illinois the real place of residence and domicile of the appellee, for the purpose of preventing him from having actual notice of her divorce suit, by making a false affidavit and filing the same in said cause as a basis for citation by publication, alleging in said affidavit that appellee on due inquiry could not be found so that process could be served upon him; that his last known place of residence was Dalhart, Tex., and that upon inquiry his then place of residence could not be ascertained, when she well knew that her husband was then in Hansford county, Tex., with Zulu as his postoffice, and could be found there at any time for service of process; that by means of said false and fraudulent affidavit she procured the notice to be mailed to appellee at Dalhart, Tex., where he had never resided and did not get his mail, and in consequence thereof he did not get such notice; that such acts constituted a fraud upon the jurisdiction of the court. There are further allegations which become immaterial in the disposition we make of the case. By a supplemental petition appellant excepted generally to appellee's answer and specially upon the ground that the facts therein alleged constituted a collateral attack upon the judgment of a court of general jurisdiction in the state of Illinois, wherein the divorce decree was entered. There are a number of other special exceptions, which it is not necessary to consider. She answered further by general denial, estoppel, and res judicata. It is further alleged that in the year 1904 appellee informed her that she and her children would have to leave their home in Hansford county, where they had resided for several years, and that he took her and her small children to Dalhart, Tex., and returned to their home; that by the efforts of herself and her minor daughters they accumulated some property in Dalhart, and that after the year 1904, except for very short intervals, they lived separate and apart from each other until 1912, when appellee wholly abandoned her and left her to her own resources. The case was tried at the March term of the district court of Dal-

lam county, to where it had been transferred upon change of venue, and during the trial appellee moved the court to direct a verdict in his favor. The material parts of the motion are as follows:

"Comes now the defendant, just at the close of the offering of the testimony in the above cause, and points out to the court that the matter alleged in defendant's answer concerning fraud upon the jurisdiction of the circuit court of Cook county, Ill., in the city of Chicago, with reference to the procuring of notice to the defendant, is established by undisputed and uncontradicted testimony on which there is no room for reasonable minds to differ, and the defendant is entitled to a peremptory instruction in his favor, because of the invalidity of the plaintiff alleged divorce decree. To be more specific, defendant alleges that the following matters are indisputably established:

"(1) That defendant had absolutely no notice or knowledge of any kind of the plaintiff's divorce suit in Chicago prior to the entry of judgment therein.

"(2) That it was required by the law of Illinois that plaintiff should file an affidavit showing where the defendant could be found, so that process could be served upon him at his last known place of residence, if known, and whether same could be ascertained by the use of diligent inquiry.

"(3) That plaintiff did make an affidavit that defendant on due inquiry could not be found, and that process could not be served upon him; that his last known place of residence was Dalhart, Tex.; and that upon diligent inquiry his present place of residence could not be ascertained, and caused her attorney in the case to make an affidavit to the same effect.

"(4) That at the time of the making of such affidavit the defendant could have been found in Hansford county, Tex., on his ranch, and could have been served with process there, and that plaintiff well knew, from having seen him there in September, 1913, and prior thereto, and from having written to him there letters in 1914, and from correspondence with their children, that defendant's last known place of residence was not Dalhart, Tex., and that he never resided in Dalhart; that upon any sort of inquiry, diligent or otherwise, plaintiff could have ascertained, and in fact did know, that his then place of residence was Hansford county, Tex., and his post office was Zulu, or Ideal.

"(5) That under the laws of Illinois it was the duty of plaintiff, and her right, to cause a copy of her petition, with a notice of the commencement of her suit, to be delivered to defendant in Texas, 30 days before the commencement of the term of the court, which was never done, and which could have been readily done.

"(6) That at the time of the entry and rendition of plaintiff's divorce decree in Chicago she was then confronted with knowledge by a return letter filed in the cause, having gone by due process of mail, with proper postage, addressed to defendant at Dalhart, Tex., showing unquestionably that he was not living in or getting his mail at Dalhart, Tex., and that plaintiff, with such knowledge, swore upon the trial of said divorce that she had last seen defendant at his ranch in Hansford county, Tex., and permitted such decree to be rendered without revealing to the court that notice ought to be sent to Hans-

ford county; that Dalhart was not in Hansford county, and that defendant's post office address was Zulu, Tex., or Ideal, Tex., and that such facts indisputably showed that plaintiff obtained her decree of divorce by false affidavit and by fraudulent concealment, and fraudulently prevented the defendant from having such notice of the proceedings as he was plainly entitled to under the laws of Illinois.

"Because the foregoing facts are shown without dispute and without controversy in this record, defendant states that there is no issuable fact to submit to the jury that could validate the judgment granting plaintiff a divorce, and that the facts and evidence uncontrovertedly show fraud upon the jurisdiction of the Illinois court as a matter of law."

Upon the filing of this motion and the reference thereto attorneys for the parties entered upon a stipulation which was filed in the cause, and contains this recital:

"Be it remembered, at this time, the defendant announced in open court that he would close the introduction of his testimony, and thereupon presented to the court his written motion, asking the court to peremptorily instruct a verdict for the defendant for the reasons stated in the motion set forth, being herein filed, and said motion presented at this time by the agreement of the counsel for the plaintiff stating in open court that they had no further testimony to admit or produce upon any issue raised by the motion; and further admitting that under the evidence there was no issuable fact to be submitted to the jury under said motion, and it being agreed by the counsel that the matters raised by said motion in the light of testimony introduced is purely a question of law."

[1] Section 12, chapter 22, of the Statutes of Illinois was introduced in evidence, and is in part as follows:

"Notice by Publication. Whenever any complainant or his attorney shall file in the office of the clerk of the court in which his suit is pending, an affidavit showing that any defendant resides or hath gone out of this state, or on due inquiry cannot be found, * * * so that process cannot be served upon him, and stating the place of residence of such defendant, if known, or that upon diligent inquiry his place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper printed in his county. * * * And he shall also, within ten days of the first publication of such notice, send a copy thereof by mail, addressed to such defendant whose place of residence is stated in such affidavit."

Under this article the appellant and her attorney each filed an affidavit, reciting that—

"John C. Sangster, the defendant, on due inquiry, cannot be found, so that process cannot be served upon him, and affiant further states that the last known place of residence of such defendant is Dalhart, Tex.; that upon diligent inquiry his place of residence cannot be ascertained."

It appears that the substituted service was based upon these two affidavits. The effect

of the stipulation, when considered in connection with the motion, is to admit the material facts set up in the latter. It, therefore, appears from a consideration of the motion that appellee had no actual knowledge of the divorce suit filed in Cook county, Ill., by appellant; that at the time the affidavits mentioned above were made he was on his ranch in Hansford county, and could have been served with a copy of the petition, and that appellant knew that fact; that she also knew he had never resided in Dalhart, and that his post office was Zulu, or Ideal. This is, in our opinion, sufficient to show a willful fraud committed by appellant upon the jurisdiction of the Illinois court and an effort upon her part to prevent appellee from having actual knowledge of the institution of her suit. It was shown that she had previously filed suit against him for divorce in the district court at Dalhart, which she subsequently dismissed; that during her residence in Dalhart she became acquainted with Richmond, who left Dalhart and went to Chicago, either with her or about the same time. While in Chicago, it appears that she had her mail addressed to her at the general delivery, and the only address ever given by her in Chicago proved to be the place where Richmond resided. When she left Dalhart and went to Chicago she left her furniture in her home at Dalhart, and told her son Tom she was going to Vancouver to see her sister, and told her son, Chris, she wanted to go up there to get a divorce. The city directory of the city of Chicago did not show that either Mrs. Richmond or Mrs. Sangster lived in the city. She testified upon the trial of her case that she did not know her husband's place of residence, and that his last-known place of residence was Dalhart. Under these facts we think the court did not err in directing a verdict for appellee. It is held in several cases in Texas that a decree of divorce obtained in a foreign state may be collaterally attacked to show that the court which rendered it had no jurisdiction, even though the judgment recites all necessary jurisdictional facts. Stuart v. Cole, 42 Tex. Civ. App. 478, 92 S. W. 1040; Morgan v. Morgan, 1 Tex. Civ. App. 315, 21 S. W. 154; Givens v. Givens, 195 S. W. 877; Jones v. Bartlett, 189 S. W. 1107. These decisions seem to be sustained in this holding by the weight of authority, and in accord with the decisions of the state of Illinois. Dunham v. Dunham, 162 Ill. 589, 44 N. E. 841, 35 L. R. A. 70; Field v. Field, 215 Ill. 496, 74 N. E. 443; Davenport v. Davenport, 67 N. J. Eq. 320, 58 Atl. 535; Lister v. Lister, 86 N. J. Eq. 30, 97 Atl. 170; Silvey v. Silvey, 192 Mo. App. 179, 180 S. W. 1071. By the weight of authority in other jurisdictions it is held that a divorce granted either spouse in a foreign jurisdiction upon substituted service is void. Olmstead v. Olmstead, 190 N. Y. 458,

83 N. E. 569, 123 Am. St. Rep. 585; Halter v. Van Camp, 64 Misc. Rep. 336, 118 N. Y. Supp. 545; Ackerman v. Ackerman, 200 N. Y. 72, 93 N. E. 192; Gouch v. Gouch, 69 Misc. Rep. 436, 127 N. Y. Supp. 476; Bruguiere v. Bruguiere, 172 Cal. 199, 155 Pac. 988, Ann. Cas. 1917E, 122; Pettis v. Pettis, 91 Conn. 608, 101 Atl. 13; Thompson v. Thompson, 89 N. J. Eq. 70, 103 Atl. 856; State v. Duncan (S. C.) 96 S. E. 294; Deyette v. Deyette (Vt.) 104 Atl. 232; In re Grossman's Estate, 263 Pa. 139, 106 Atl. 86, 88. These questions are also briefed and discussed in the notes to Perkins v. Perkins, L. R. A. 1917B, 1039, 1040; Forest v. Fey, 218 Ill. 165, 75 N. E. 789, 1 L. R. A. (N. S.) 740, 109 Am. St. Rep. 249; Joyner v. Joyner, 131 Ga. 217, 62 S. E. 182, 18 L. R. A. (N. S.) 647, 127 Am. St. Rep. 220; Succession of Benton, 106 La. 494, 31 South. 123, 59 L. R. A. 183.

"To render a foreign decree of divorce entitled to recognition in another state so far as the marriage relation is affected, jurisdiction of the person of the defendant must be in some way acquired. There must be notice to the defendant, either by service of process or if the defendant be a nonresident, by such publication or other constructive notice as is required by the laws of the state." 9 R. C. L. p. 510, § 332.

"It is well settled that each state has exclusive jurisdiction over the marriage status of its citizens, and hence a court of another state has no jurisdiction to decree a divorce between parties where neither has a domicile or residence within the state of the forum. Accordingly, a divorce rendered by the court of a state in which neither party had a legal residence, or domicile, especially where there is no personal service of process upon the defendant within the state of the forum, and she or he does not voluntarily appear, is not entitled to recognition in another state under the full faith and credit clause of the federal Constitution." Id. p. 511, § 333.

"The general rule that a judgment of the courts of one state may be collaterally impeached in the courts of another state, if it was procured by fraud upon the legal rights of the party against whom it was rendered, applies to foreign decrees of divorce. It has been held that a wife, who on separation from her husband, goes to another state for the purpose of obtaining a divorce, and brings suit without disclosing the fact that a suit was pending in the state of her former residence, involving the same matters alleged as the cause of divorce and in which she has appeared, is guilty of such fraud as to invalidate a decree of divorce obtained by her, although the pendency of the prior suit could not have been pleaded in abatement, or in bar to her divorce suit." Id. § 340, p. 520.

[2] These authorities and the decisions cited and discussed in them unquestionably sustain the court's action. It is not necessary for us to decide, and we do not hold, that a foreign decree, rendered upon substituted service, is void, but we are warranted by the authorities in holding that if it can

be shown, as in this case, that citation by publication was based upon a false affidavit, substituted service is insufficient; and, when it is further shown that by the statutes of the foreign state the plaintiff was required to have transmitted to the defendant a copy of her petition, and by fraud she induced the clerk of the court to send such copy to a post-office where she knew it would not be received by defendant, there has been such a fraud upon the jurisdiction as to render the decree void. We deem it unnecessary to enter into an extended discussion of the principles involved, and content ourselves with reference to the foregoing authorities to sustain us in our holding. The foreign divorce being void, appellant is still the lawful wife of John C. Sangster, the appellee, and is not entitled to maintain this suit for a division of the community property.

Believing that the trial judge properly directed a verdict, the judgment is affirmed.

### On Motion for Rehearing.

Appellants have filed an unusually vigorous motion for rehearing, attacking the original opinion; and because the motion is teeming with assertions and statements unwarranted and unsupported by either the opinion, the record, or the law, it becomes our duty to consider the motion in detail.

The first ground is that this court erred in assuming as a fact, in the decision, that Matilda Richmond had gone to Chicago for the purpose of procuring a divorce from the appellee, when the question of her bona fide residence in Illinois at the time she filed her petition was a controverted issue in the trial, and should have been submitted to the jury. We did not assume that she had gone to Chicago for the purpose of procuring a divorce from the appellee. We merely recited some potent facts from the record tending to show that that was her purpose. We were not called upon to assume either way because, under the record, it was an immaterial question what her purpose was in going to Chicago. In this ground of the motion it is stated that her purpose in going there was a controverted issue. In subdivision (a) of the seventeenth ground of the motion it is stated that her bona fide residence in Cook county was not questioned, and to the same effect is the sixth assignment of error. Both statements cannot be true; but for the purpose of this opinion we will admit that both are true, and still appellant is not entitled to a rehearing, because our decision is predicated upon her fraud upon the jurisdiction of the Illinois court, in making an admittedly false affidavit as a basis for service of notice upon her husband.

[3] The second ground asserts that this court erred in holding that the question of the bona fide residence of the appellant in Illinois was not an immediate or controlling issue in the trial of the cause, and that the validity of the Illinois divorce decree depended upon the truthfulness of the facts stated in the affidavit for service rather than the good faith of the party making the affidavit. We made no such holding, and no such statement can be found in the opinion, but we do hold it now. The appellee's motion for judgment after the evidence closed charged that her affidavit and the affidavit of her attorney upon which the substituted service was attempted to be based were both false and fraudulent. Immediately upon filing such motion appellant's counsel prepared a stipulation, the effect of which is to admit the charges of falsehood and fraud upon the jurisdiction of the court. Under this state of the record, her bona fide residence in Illinois is unimportant. If she made a false affidavit as a basis for process, she could not have made it in good faith. By the stipulation her counsel admitted its falsity. In such case there can be no good faith shown or presumed in the making of the affidavit. The case of Haddock v. Haddock, decided by the Supreme Court of the United States, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, and a number of other cases cited in the original opinion, settle this question against appellant's contention.

The third ground of the motion says that we erred in finding as a fact that when appellant made the affidavit for notice by publication she acted in bad faith and intended to perpetrate a fraud upon the jurisdiction of the Illinois court, and further asserts that this was a disputed issue in the trial of the cause. It was a disputed issue during the trial, but when at the close of the testimony her counsel, by solemn written stipulation, admitted that the affidavit was false, that settled the question, and we either had to find that she acted in bad faith, or find contrary to the stipulation, which we were not authorized to do. It is true that the seventh assignment of error complains of the trial court's action in not permitting her to testify that she acted in good faith when she made the affidavit, but this objection was waived when the stipulation admitting fraud was subsequently filed.

The fourth ground of the motion is that we erred in holding in effect that under the Illinois divorce statute the term "place of residence" "means the same thing in law as post office address," or place where the defendant at that very time could be found, for the reason that the Illinois statute required that the affidavit for publication state the last known place of residence of the defendant, and not his then post office address or the place where he then might be found. The statute of Illinois required the clerk to send a copy of the notice "by mail, addressed to the defendant, whose place of residence is stated in the affidavit." The affida-

vit states "that the last-known place of residence of such defendant is Dalhart, Tex.," and, further, "that upon diligent inquiry his place of residence cannot be ascertained." Both statements were, by the stipulation considered in connection with the motion, admitted to be false, and are shown by the record to have been willfully false. Mail must, in the nature of things, go to some post office in order to reach the addressee's place of residence. She so framed her affidavit that the clerk was not able to send notice to either place, although she knew both his post office address and place of residence.

[4] The fifth ground asserts that we erred in holding as a matter of law and under controverted facts that at the time the affidavit for notice for publication was made the defendant in the divorce case did not reside at Dalhart, Tex., while the uncontradicted evidence showed that the plaintiff for many years before going to Illinois resided at Dalhart, and that it followed as a matter of law that the legal residence of the defendant was Dalhart, Tex., regardless of where he stayed or spent his time. We did not hold it as a matter of fact. In Texas the erring wife cannot fix the domicile of the husband, Speer's Law of Marital Rights, §§ 72, 73, 403. There is not a line of evidence in the record which even remotely tends to show that the appellee ever fixed, or intended to fix, his residence at Dalhart, Tex.

[5] The sixth ground is that we erred in holding that the failure of the appellant to serve the defendant with a copy of her petition was willful fraud, because the Illinois statute in such cases does not require service of copy of petition upon a nonresident defendant, but merely that a copy of the published notice of suit should be sent by mail to his last known place of residence, and not to his post office address, or to the place where he might be found. This ground is a mere quibble. In the first place, we made no such holding. Where the word "petition," instead of "notice," was used in the original opinion is where we were summarizing the facts admitted in effect by the stipulation and the motion. Paragraph 5 of the motion is that under the laws of Illinois it was the duty of plaintiff and her right to cause a copy of her petition, with a notice of the commencement of her suit, to be delivered to defendant in Texas, 30 days before the commencement of the term of the court, which was never done, and which could have been readily done. The language of the stipulation is, in part:

"Be it remembered at this time, defendant announced in open court that he would close the introduction of his testimony, and thereupon presented to the court his written motion, asking the court to peremptorily instruct a verdict for the defendant for the reasons stated in the motion set forth being herein filed, and said motion presented at this time by the agreement of counsel for the plaintiff, stating in open court that they had no further testimony to admit or produce upon any issue raised by the motion, and further admitting that under the evidence there was no issuable fact to be submitted to the jury under said motion, and it being agreed by the counsel that the matters raised by said motion, in the light of testimony introduced, is purely a question of law."

Attorneys are authorized to stipulate concerning any fact to be established by the evidence. The effect of this stipulation is, when considered with the fifth ground of the motion, that the laws of Illinois required her to serve the defendant with a copy of her petition as well as a copy of the notice. We would have to set the stipulation aside to hold otherwise.

[6] The seventh ground is that we erred in holding that the validity of the Illinois divorce decree depended solely on the truthfulness of the facts stated in the affidavit for service by publication or the good faith of the party making the affidavit. We did so hold, and the holding is correct, and is sustained by every authority cited on that point in the opinion. Appellant asserts in this ground that the error is in so holding, rather than in holding that the validity of the decree depended upon the bona fide residence of the plaintiff within the state of Illinois at the time of filing her petition. If by her false affidavit she perpetrated a fraud upon the jurisdiction of the court, it becomes an immaterial inquiry as to her bona fide residence within the state of Illinois. It was not necessary for us to discuss that question. Her bona fide residence in Illinois would not validate a decree in her favor rendered there, when she sought to enforce rights based upon it in the state of Texas, if the decree was obtained without jurisdiction. This question is also settled in the Haddock Case. We did not discuss the question of her bona fide residence in Illinois, because it was not necessary; but, since appellant repeatedly in the motion asserts that she was a bona fide resident, we will discuss it. The facts show that she formed the acquaintance of and associated with her coplaintiff herein, Richmond, while she was living at Dalhart, that he departed for Chicago, and that she either went with him or followed in a short time. While in Chicago, she had her mail addressed to her at general delivery, and the only address she ever gave proved to be the place where Richmond resided. When she left Dalhart for Chicago she left her furniture in her home at Dalhart; she told her son Tom she was going to Vancouver to see her sister, and told her son Chris she was going to Chicago to get a divorce. Although she claims to have resided in Chicago nearly two years, the city directory of that city

does not show that either Mrs. Richmond or Mrs. Sangster ever lived there. The facts further show that she made an unsuccessful attempt to get a divorce before she went to Chicago, and dismissed her suit without a trial upon the merits, and that as soon as she thought she was divorced she came back to her home and her furniture in Texas, bringing her coplaintiff with her, and filed this suit. It is immaterial, as said, for us to discuss the bona fides of her residence in Illinois, but under the decisions, not only of the state of Illinois, but of every other state whose decisions we have read, these facts are sufficient to show that when she went to Chicago it was not with an animus manendi, and if the court had submitted the issue to the jury and the jury had so found it would have been the duty of the trial judge to set the verdict aside and impanel a jury with less gullibility. Under these facts, if it became necessary, the appellee could have successfully attacked the divorce decree in Chicago and had the same set aside upon the ground that she was not a bona fide resident of Illinois at the time she filed her suit. This is clear from the language of the Illinois Supreme Court in Albee v. Albee, 141 Ill. 550, 31 N. E. 153, Way v. Way, 64 Ill. 406, and the cases therein cited. In line with the Illinois cases is Stuart v. Cole, 42 Tex. Civ. App. 478, 92 S. W..1040; and the other Texas cases therein cited. The rule in such cases is that merely going to a state for the purpose of securing a divorce and residing there the required length of time, but without any intention of remaining there permanently or indefinitely, is not sufficient to give jurisdiction in divorce proceedings. Bechtel v. Bechtel, 101 Minn. 511, 112 N. W. 883, 12 L. R. A. (N. S.) 1103, and note. It is further held that the intention, coupled with the acts of the party, must both be considered. What is here said disposes of the ninth ground in the motion.

[7] The eighth ground asserts that we erred in holding in effect that the action for divorce in the state of Illinois was an action in personam, when the Supreme Court of the state of Illinois, in construing its divorce statutes, holds that such an action is one in rem. In the first place, we did not make any such holding, either in fact or in effect. We purposely avoided discussing that question. The Stuart Case, supra, holds that such a proceeding is an action in rem. There is no concord in the holdings of the various courts upon the question. In so far as the decision of this case is concerned, it is immaterial whether a divorce proceeding is an action in rem or an action in personam. When a judgment rendered in either case is procured in a court of foreign jurisdiction by willful fraud upon the jurisdiction of the court, the judgment may be col-

laterally attacked, and all the authorities cited in the original opinion which discuss the question so hold.

It is said in the tenth ground that we failed to follow the construction of the Illinois statutes given to them by the Supreme Court of Illinois. On the contrary, we followed the decisions of the Illinois courts to the letter, in so far as they construed the Illinois statutes. It was held in the Haddock Case by the Supreme Court of the United States that the full faith and credit clause of the federal Constitution is not binding upon the state courts in considering divorce decrees rendered in foreign jurisdictions. If there were any decisions of the Illinois courts holding otherwise, they would be controlled by the holding of the Supreme Court of the United States in the Haddock Case, which court is the court of last resort in construing the federal Constitution.

[8] The remaining grounds of the motion are simply a reiteration of the matters already considered, except in the fourteenth ground it is asserted that because, within two or three months after Matilda Richmond procured her divorce in Illinois, she remarried and came to Dalhart, and because the appellee often visited her there, he recognized the validity of the decree of divorce, and is estopped to deny her right to recover her interest in the community estate. In other words, the proposition is that a decree of a Chicago court, procured through fraud and falsehood, may be vitalized and rendered valid by the act of a defendant, who was never made a party to the suit, and knew nothing of the action until after the decree was rendered, by subsequently visiting the plaintiff and by failing to go to Illinois and attack the judgment because of fraud. Such a holding would open the door for the rendition of divorce decrees by collusion, which is condemned by the Texas statute and in jurisdictions of other states. The proposition is too absurd to require discussion.

[9] The whole trouble with appellant's counsel in this case is that they entered into the stipulation in the record under the impression that the Chicago judgment, which recited service and upon its face showed jurisdiction, could not be collaterally attacked by appellee in this state, because of the fraud perpetrated by appellant upon the jurisdiction of the Chicago court. They entered into the stipulation believing that such was the law. This is shown by their pleadings; it is further shown by their brief from beginning to end; it was manifested during the oral argument upon the submission of the case; and even the motion for rehearing shows that they have a lingering hope that such is or will be declared the law. We think the fact of fraud was overwhelmingly established by the evidence, but

that becomes immaterial in the light of the agreement that the affidavits were false. No effort was made in the trial court, by motion for new trial, to set aside the stipulation as being improvident, and its effect cannot be avoided in this court. We are bound by the fact as admitted, and in the light of the motion and the stipulation, which together submitted to the trial court the bare proposition of law whether such fraud upon the jurisdiction would invalidate the decree, the trial judge could do nothing else than peremptorily instruct the jury to find for the appellee.

The motion is overruled.

